[Sac. No. 6746. In Bank. Feb. 19, 1957.]

HARRY SHEPHERD, Plaintiff and Appellant, v. STATE PERSONNEL BOARD, etc., et al., Defendants and Appellants.

James H. Phillips for Plaintiff and Appellant.

Edmund G. Brown, Attorney General, Paul M. Joseph and Willard A. Shank, Deputy Attorneys General, for Defendants and Appellants.

GIBSON, C. J.—Dr. H. E. Shepherd, a civil service employee holding the position of a supervising veterinary meat inspector with the California Department of Agriculture, was dismissed in January of 1952 by the director of the department, and, after a hearing, the State Personnel Board approved the dismissal. In this mandamus proceeding, the superior court, after determining that some of the findings and conclusions of the board were warranted but that others were not, entered judgment ordering the board to set aside its decision and to reconsider the penalty imposed. Both Shepherd and the board have appealed.

For the most part, Shepherd's official duties consisted of reviewing, correcting and passing upon plans for the remodeling or construction of meat slaughtering and processing plants to assure that they satisfied California sanitary and building requirements. In that connection, he assisted architects and contractors in preparing such plans and visited construction projects to see that they met state standards. His duties also included supervising the work of state veterinary meat inspectors, surveying meat plants to determine whether their operating methods met state requirements, recommending changes in such establishments, compiling records, and reporting to the central office.

It was shown at the administrative hearing that on four occasions Shepherd received compensation from private parties for preparing plans to be used in the construction or remodeling of meat plants. The first of these transactions occurred in 1946 and involved the People's Meat Market in Calistoga, a slaughtering plant which was operated under California inspection service. Shepherd inspected the market, found that it did not comply with state sanitary standards, and reported this fact to his superiors. He advised the

owners that construction of a new establishment at another location would be necessary because the existing plant could not be remodeled to meet the requirements. The owners hired a building contractor to investigate the possibilities of constructing a new plant, and Shepherd prepared plans outside of duty hours, furnished them to the contractor, knowing whom he represented, and received $500 from him. The proposed plant was not built, and the old one continued to operate under unsanitary conditions for a considerable time.

Another of the transactions concerned the Grass Valley Meat Company, which was subject to California meat inspection service. In 1947, at the request of the company, Shepherd prepared remodeling plans outside of duty hours which, if adopted, would have qualified the plant for federal meat inspection service but would also have been suitable for state purposes. He was paid a total of $850 for this work. After the plans had been furnished, the company decided not to change from state to federal meat inspection service and asked Shepherd to prepare simpler plans which would meet California requirements. He drew a second set of plans in 1949 which were used in remodeling the plant, and, in the course of his duties, he inspected the work being done. During 1949 and 1950, 104 barrels of tallow belonging to Shepherd were stored by the company without charge. He removed the tallow after another inspector determined that it was creating an unsanitary condition at the plant.

With respect to the third transaction, it was shown that the Union Packing Company in Vernon, which was subject to federal meat inspection service but was contemplating applying for state service, made a request to one of Shepherd's superiors that Shepherd visit the plant to conduct an inspection and to discuss remodeling the premises. In September of 1949, Shepherd came to the plant, conferred with the manager, at least in part during duty hours, and took measurements the following weekend. The manager requested him to prepare remodeling plans, and he did so outside of duty hours. He supplied them to the company and received $500 in payment. The company did not use the plans and did not change from federal to state inspection.

The fourth transaction involved Shepherd's dealings in August and September of 1950 with the owner of a trailer manufacturing business in San Jose. The owner agreed with a meat company that he would convert his premises into a meat processing plant which would then be leased to the

company. After plans for converting the premises were obtained from a third party, Shepherd's assistance was sought with respect to structural changes which were necessary because the smokehouse and cooler of the proposed plant would encroach on an easement. He revised the plans outside of duty hours and was paid $250 for his services. As Shepherd knew, it was intended that the plant, when finished, would be subject to California meat inspection service. While the remodeling plans were not submitted to Shepherd for approval in his official capacity, he inspected the construction work as a part of his duties. When completed, the processing plant operated under state inspection service.

In 1945, before any of the four transactions occurred, Shepherd submitted a letter to his superior in which he requested permission to work "on a fee basis" outside of duty hours as a consultant for architects, engineers and contractors with respect to the designing of meat plants. The permission which he sought was refused, and he was told that he was not to accept money from anyone for doing work in connection with his official duties and that receiving such a payment was incompatible with his job. In a bulletin which was issued by the Bureau of Meat Inspection on August 29, 1949, and which Shepherd read, veterinary meat inspectors were instructed that they were not to perform unofficial work for the operator of an establishment to which they were assigned. On two occasions in 1949, Shepherd was questioned by his superior as to whether he was receiving money from architects or contractors for drawing plans or doing other work, and he denied doing so.

The board, after making detailed findings substantially in accord with the facts set forth above, found that the following causes for discipline existed within the meaning of section 19572 of the Government Code[1]: insubordination, wilful disobedience, dishonesty, acts during duty hours which were incompatible with the public service, acts during duty

---

[1]Section 19572 of the Government Code provides, in part: "Each of the following constitutes cause for discipline of an employee, or person whose name appears on any employment list: . . .

"(d) Inexcusable neglect of duty. . . .

"(f) Insubordination.

"(g) Dishonesty. . . .

"(p) Wilful disobedience. . . .

"(r) Violation of this part or board rule.

"(s) Any other failure of good behavior or acts either during or outside of duty hours which are incompatible with or inimical to the public service."

hours which were inimical to the public service, acts outside of duty hours which were incompatible with the public service, acts outside of duty hours which were inimical to the public service, inexcusable neglect of duty, failure of good behavior, and "violation of Title 2, Division 5, Part 2, of the Government Code."

The superior court determined that there was substantial evidence to support the board's findings of failure of good behavior, "violation of Title 2, Division 5, Part 2, of the Government Code," and acts during and outside of duty hours which were incompatible with and inimical to the public service. It concluded, however, that none of Shepherd's acts constituted the other causes for discipline found by the board, that, because of an amendment to section 19251 of the Government Code which became effective on October 1, 1949, the findings of incompatible acts were improper insofar as they related to the period between that date and October 16, 1950, and that punitive action could not be based on the transaction involving the Union Packing Company.

A preliminary question is presented as to whether the court erred in failing to reweigh the evidence and exercise its independent judgment thereon. ▇ It is, of course, settled that the factual determinations of a statewide administrative agency which derives adjudicating power from the Constitution are not subject to re-examination in a trial de novo but are to be upheld by a reviewing court if they are supported by substantial evidence. (*Southern Pac. Co.* v. *Public Utilities Com.*, 41 Cal.2d 354, 367 [260 P.2d 70]; *Coborn* v. *Industrial Acc. Com.*, 31 Cal.2d 713, 716-717 [192 P.2d 959]; *Covert* v. *State Board of Equalization,* 29 Cal.2d 125, 131 [173 P.2d 545]; *Pacific Greyhound Lines* v. *Railroad Com.*, 11 Cal.2d 427, 429 [80 P.2d 971]; *Griswold* v. *Department of Alcoholic Beverage Control,* 141 Cal.App.2d 807, 810 [297 P.2d 762].) In *Boren* v. *State Personnel Board,* 37 Cal.2d 634 [234 P.2d 981], we held that certiorari would lie to review an order of the State Personnel Board, stating, at page 638, that the jurisdiction of the board, "including its adjudicating power," is derived directly from the Constitution. It has also been squarely held that the findings of the board are not to be disturbed if supported by substantial evidence. (*Black* v. *State Personnel Board,* 136 Cal.App.2d 904, 909 [289 P.2d 863]; *Genser* v. *State Personnel Board,* 112 Cal.App.2d 77, 80 [245 P.2d 1090]; *Nelson*

v. *Department of Corrections,* 110 Cal.App.2d 331, 336 [242 P.2d 906].)

The board was established in 1934 by section 2(a) of article XXIV of the Constitution, and section 3(a) of that article, which was adopted in the same year, provides: ''Said board shall administer and enforce, and is vested with all of the powers, duties, purposes, functions, and jurisdiction which are now or hereafter may be vested in any other state officer or agency under, Chapter 590 of the California Statutes of 1913 as amended or any and all other laws relating to the state civil service as said laws may now exist or may hereafter be enacted, amended or repealed by the Legislature.'' In 1934, chapter 590 of the statutes of 1913, as amended in 1929, contained provisions requiring the then existing State Civil Service Commission to hold hearings upon request of a civil service employee against whom charges had been filed, to receive and carefully consider evidence, and to render a decision which, in its judgment, was just and proper. (Stats. 1929, pp. 251-252; Deering's Gen. Laws, 1929, Act 1400, pp. 3010-3011.) Substantially similar provisions were made applicable to the State Personnel Board by statute in 1937, when chapter 590 was repealed and the commission was abolished (Stats. 1937, pp. 2085, 2106, 2112; Deering's Gen. Laws, 1937, Act 1404, pp. 742, 764, 770), and they were in force as part of the Government Code[2] when the board's hearing in this case was held in 1952 (see Gov. Code, §§ 19578, 19582, prior to 1953 amendments). The board's power to hold hearings and render decisions in disciplinary proceedings involves, of course, the examination of facts, the resolution of conflicts in the evidence, and the exercise of judgment with respect thereto. It is apparent from the foregoing that the Constitution authorizes the Legislature to specify the powers of the board and that, pursuant to that authorization, the board has been vested with adjudicating power. The findings of fact of the State Personnel Board must be upheld if they are supported by substantial evidence.

As we have seen, Shepherd received payment on four occasions from present or prospective meat plant owners or their representatives for construction and remodeling plans which he prepared outside of duty hours. The evidence re-

[2]The 1937 law was repealed in 1945, at which time the present Civil Service Act was codified in sections 18500-19765 of the Government Code. (Stats. 1945, pp. 535, 539, 609.)

lating to the prior refusal of permission to do such work shows that he knew that his conduct was contrary to instructions which had been given him. In 1949 he twice falsely denied engaging in such activities when questioned by his superior, and thereafter, notwithstanding these interviews and the bulletin issued to veterinary meat inspectors by the Bureau of Meat Inspection, he persisted in those activities. The evidence is sufficient to support the findings of insubordination, wilful disobedience and dishonesty. In this connection, there is no sound reason for distinguishing the transaction involving the Union Packing Company from the other transactions. While that company was at all times subject to federal meat inspection, it was contemplating applying for California service when Shepherd drew the remodeling plans, and he must have known that the plant came within the scope of his official duties, particularly since he visited it at the request of his superior.

With respect to the findings that Shepherd was guilty of acts which were incompatible with and inimical to the public service under subdivision (s) of section 19572 of the Government Code, we must determine the effect of the amendment of section 19251 of that code which became effective on October 1, 1949. Until that date, section 19251 merely prohibited state employees from engaging in incompatible activities. The section, as amended, provides in substance that a state officer or employee shall not engage in any activity which "has been determined" to be inconsistent, incompatible, or in conflict with his duties and that each appointing power "shall determine and prescribe," subject to approval of the board, those activities which will be considered inconsistent, incompatible, or in conflict with the duties of state officers or employees under his jurisdiction.[3]

---

[3]Section 19251 of the Government Code now provides: "A state officer or employee shall not engage in any employment, activity, or enterprise which has been determined to be inconsistent, incompatible, or in conflict with his duties as a state officer or employee or with the duties, functions or responsibilities of his appointing power or the agency by which he is employed.

"Each appointing power shall determine and prescribe, subject to approval of the board, those activities which, for employees under his jurisdiction, will be considered inconsistent, incompatible or in conflict with their duties as state officers or employees. In making this determination the appointing power shall give consideration to employment, activity or enterprise which: (a) involves the use for private gain or advantage of state time, facilities, equipment and supplies; or the badge, uniform, prestige or influence of one's state office or employment or, (b) involves receipt or acceptance by the officer or employee of any money or other consideration from anyone other than the State

An incompatibility statement prepared by the Director of the Department of Agriculture was not approved by the board until October 2, 1950, and it was not received by Shepherd until October 16, 1950.

It seems clear that the 1949 amendment to section 19251 was intended to provide for the designation of incompatible activities in a specified manner, namely, that each appointing power should prescribe the prohibited activities, subject to approval of the State Personnel Board. It was also contemplated, we think, that employees should be given notice of the action taken by the appointing power and the board. The purposes of section 19251 would be defeated if, in the absence of compliance with that section by the appointing power, an employee could be punished under subdivision (s) of section 19572 for acts incompatible with and inimical to the public service. In our opinion, application of subdivision (s) in this type of case was made dependent, as of October 1, 1949, upon compliance by the appointing power with section 19251, and Shepherd could not be disciplined under the subdivision for incompatible and inimical activities occurring between that date and October 16, 1950. We do not mean to suggest, however, that his conduct during this period could not form a basis for discipline under some subdivision of section 19572 other than subdivision (s).

The record shows that Shepherd's activities in connection with the trailer manufacturing business in San Jose, as well as some of his conduct in the Union Packing Company transaction, occurred between October 1, 1949, and October 16, 1950. However, before October 1, 1949, he drew plans for the People's Meat Market and the Grass Valley Meat Company, both of which were subject to California meat inspection

for the performance of an act which the officer or employee, if not performing such act, would be required or expected to render in the regular course of hours of his state employment or as a part of his duties as a state officer or employee or, (c) involves the performance of an act in other than his capacity as a state officer or employee which act may later be subject directly or indirectly to the control, inspection, review, audit or enforcement by such officer or employee or the agency by which he is employed.

"Each state officer and employee shall during his hours of duty as a state officer or employee and subject to such other laws, rules or regulations as pertain thereto, devote his full time, attention and efforts to his state office or employment."

Prior to October 1, 1949, section 19251 of the Government Code read: "A State officer or employee shall not engage in any other activity or enterprise inconsistent, incompatible, or in conflict with his duties as a State officer or employee."

service at the time. As noted above, his duties included surveying meat plants to determine whether their operating methods met state requirements, and he was principally responsible for reviewing building plans and visiting construction projects to see that there was compliance with state standards. It could be inferred that he was improperly using the prestige and influence of his office by dealing privately with those who would be anxious to keep on good terms with him as one who had authority over them. Moreover, he could easily have found himself in the position of having to pass officially upon work which he had been privately compensated to do, and it was established that, in the course of his duties, he did in fact inspect work being done at the Grass Valley Meat Company in accordance with plans which he prepared. The evidence is sufficient to show that, prior to October 1, 1949, Shepherd was guilty of acts which were incompatible with and inimical to the public service within the meaning of subdivision (s) of section 19572.

We are of the view, however, that there is no substantial evidence of inexcusable neglect of duty. The board claims that Shepherd was guilty of such neglect to the extent that he spent time during duty hours obtaining information which he later used in preparing the plans, but it would seem that the information would also have been necessary to the efficient performance of his official duties, and there is nothing in the record to the contrary.

The superior court upheld two findings of the board which, in our opinion, are fatally defective. The finding that Shepherd was guilty of a "violation of Title 2, Division 5, Part 2, of the Government Code" is too vague and uncertain to be a ground for punitive action. The part of the Government Code referred to in the finding constitutes the entire State Civil Service Act, and, by listing a violation of that part as a cause for discipline in subdivision (r) of section 19572, the Legislature must have intended that the board make a determination as to the specific code section which had been violated. In the absence of such specification, an intelligent appraisal of the basis of the board's decision would, in some circumstances, be impossible. The board's finding of a "failure of good behavior" as a separate ground for punitive action is also defective. This finding was based on subdivision (s) of section 19572 of the Government Code, which, following a number of other subdivisions setting forth causes for discipline, lists, "Any other failure of good be-

havior or acts either during or outside of duty hours which are incompatible with or inimical to the public service.'' As we have seen, the board, in addition to finding that Shepherd was guilty of a failure of good behavior, determined that he had acted in a manner incompatible with and inimical to the public service. To uphold the finding in question, therefore, would require us to construe subdivision (s) as meaning that a ''failure of good behavior'' is a distinct ground for punishment, irrespective of whether it involves incompatible or inimical acts and independent of those acts. Harm to the public service is the reasonable standard to apply in disciplining public employees, and the proper interpretation of subdivision (s) is that the words ''incompatible with or inimical to the public service'' were intended to qualify ''failure of good behavior.''

In summary, we have concluded that the board's findings of acts incompatible with and inimical to the public service under subdivision (s) of section 19572 are improper with respect to the period between October 1, 1949, and October 16, 1950, and that the findings of inexcusable neglect of duty, failure of good behavior, and ''violation of Title 2, Division 5, Part 2, of the Government Code'' are defective. ▄▄ The basis of the board's decision approving Shepherd's dismissal thus partially fails, and it is settled that, in such a situation, orderly procedure will best be preserved by remanding the case to the administrative agency empowered to act in matters of discipline so that it may reconsider the penalty to be imposed. (*Bonham* v. *McConnell,* 45 Cal.2d 304, 306 [288 P.2d 502] ; *Cooper* v. *State Board of Medical Examiners,* 35 Cal.2d 242, 252 [217 P.2d 630, 18 A.L.R.2d 593].)

The judgment is reversed, and the superior court is directed to enter judgment instructing the State Personnel Board to set aside its decision and to determine the penalty to be imposed in the light of the foregoing opinion.

Shenk, J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.