[Civ. No. 11603.   Third Dist.   June 12, 1968.]

CARL D. ORLANDI, Plaintiff and Appellant, v. STATE
PERSONNEL BOARD et al., Defendants and Respondents.

Horace E. Cecchettini and William S. Gregory for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Richard K. Turner, Deputy Attorney General, for Defendants and Respondents.

BRAY, J.*—Appellant appeals from the judgment of the Superior Court of Sacramento County denying petition for a writ of mandate to compel the State Personnel Board to set aside its decision dismissing him from his position as a State Traffic Officer.

### QUESTIONS PRESENTED

1. To sustain a cause for discipline under section 19572, subdivision (t), Government Code, must there be affirmative evidence that appellant's conduct actually "causes discredit to his agency or his employment?"

2. Under subdivision (t), did "ticket fixing" have to be proscribed by a regulation?

Appellant was served with a notice of punitive action signed by Bradford Crittenden, then Commissioner of the

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

California Highway Patrol, dismissing appellant from his position as a State Traffic Officer, effective March 1, 1965. He appealed to the State Personnel Board. After a hearing held before a hearing officer, the latter submitted a proposed decision sustaining the dismissal. The proposed decision and the finding of facts therein were adopted by the State Personnel Board as its decision. Appellant filed a petition for rehearing, which was denied. He then filed in the Sacramento Superior Court a petition for writ of mandate to set aside the State Personnel Board's decision. An alternative writ of mandate was issued. After a hearing the alternative writ was discharged and the petition for writ of mandate denied. Appellant appeals.

## STATEMENT OF FACTS

From July 14, 1952 until March 1, 1965, appellant was a State Traffic Officer with the California Highway Patrol. For some time prior to March 1, appellant worked part-time as a real estate salesman in association with Mr. Fred Festersen in Roseville, who provided appellant office space, paid him commissions and made real estate referrals to him. On January 20, 1965, California Highway Patrol Officer Chapman issued a citation to Festersen for traveling 70 miles per hour in a 65-mile zone near Auburn, and for driving without a valid driver's license (violations of Veh. Code, §§ 22349 and 12951). Officer Chapman the same day turned in to the Highway Patrol office at Auburn copies of the citation.

Later that day Festersen contacted appellant, telling him that his speedometer was probably wrong, possibly due to oversized tires, and asked appellant for help in connection with the citation. Appellant took Festersen's copy of the citation and indicated that he would help Festersen with it. The next day appellant obtained the court copy of the citation from a clerk at the Highway Patrol's Auburn office, and asked the clerk to give him the driver's license information when it arrived from the Department of Motor Vehicles. Appellant contacted Officer Chapman, asking if he had any personal feelings regarding Festersen's citation. Chapman indicated that he did not care what was done about the citation as long as it was cleared with the captain. Appellant agreed to do this. Appellant also took from the clerk the pink copy of the citation but returned it to her, knowing that if the pink copy did not appear at Sacramento headquarters an investigation would be conducted to determine its whereabouts. Appellant kept the court copy and at no time returned

it to the patrol office or sent it to the court. Festersen apparently felt that the citation was taken care of and did not appear in court on the date set in the citation.

In the meantime, appellant used his patrol car to pace Festersen as he drove along the highway and found that the latter's speedometer indicated 65 miles per hour at a true 70 miles per hour. Apparently the error was caused by oversized tires. A report was received from the Department of Motor Vehicles that Festersen did not have a valid license.

In the normal course of events, appellant's possession of the court copy of the citation would prevent the court from having knowledge of the citation and therefore no action would be taken against Festersen. By preventing the court copy of the citation from reaching the court, appellant effectively "fixed" the ticket as far as Festersen was concerned. Appellant concedes that for the purposes of this appeal, he "fixed" Festersen's citation issued by Officer Chapman.

Initiated by the suspicions of the clerk from whom appellant obtained the copies of Festersen's ticket and those of Officer Chapman, an investigation ensued. When he learned through a girl in Festersen's office that the matter was under investigation, appellant immediately had the violator's copy returned to Festersen through a third person. On two separate occasions when asked by his superiors about the matter appellant refused to give any explanation. Appellant threw the court copy of the citation into a fireplace in his home, knowing that he was thereby destroying an official record and an important piece of evidence in the investigation. Festersen later appeared in court, informed the judge of what had occurred and received a considerable fine.

Throughout the proceedings, appellant denied that he was intending to "fix" Festersen's ticket or to try to get it dismissed. He maintained that he wanted the court's copy of the citation so that he could present it to the court himself and show extenuating circumstances (speedometer error). The matter slipped his mind and he forgot to appear in court on the date set in the citation.

The findings of the hearing officer adopted by the board found that appellant wilfully secreted the court copy of Festersen's citation to prevent the latter from being prosecuted as a traffic violator, and later wilfully destroyed the court copy of the citation in order to obstruct the investigation then being conducted by his superiors.

■ 1. Not necessary to produce evidence that appellant's conduct causes discredit.

The notice of punitive action served upon appellant charged him with violation of subdivisions (f), dishonesty; (o), wilful disobedience; (r), violation of section 19251 which deals with other employment; and (t), hereinafter discussed, of section 19572, Government Code. The findings expressly found that the evidence did not establish violation of the first three above-mentioned subdivisions. It did find violation of subdivision (t). After finding that appellant's conduct amounted to "fixing" Festersen's citation, it found said conduct "constitutes failure of good behavior during and outside of duty hours which is of such a nature that it causes discredit to his agency and to his employment," within the meaning of Government Code, section 19572, subdivision (t).

Appellant contends that as no allegations of fact asserting that appellant's conduct actually resulted in any damage to the reputation of the California Highway Patrol or to appellant's employment, and no evidence was introduced to that effect, the charge of violating subdivision (t) was not sustained. Moreover, that a state employee's conduct, in order to be a cause for discipline under subdivision (t), must be publicized, known and communicated to such an extent that there is actual damage done to the reputation of the employing agency or to the employment of the employee.

Section 19572 provides "the following constitutes cause for discipline . . . (t) Other failure of good behavior either during or outside of duty hours *which is of such a nature that it causes discredit to his agency or his employment.*" (Italics added.)

Appellant goes into detail to support his position by illustrations of statutory history and statutory construction. But such an approach is entirely unnecessary, for there is no need to refer to rules governing construction where the statutory language is clear and unambiguous. In other words, there must be a *need* for statutory construction. (See, e.g., *Caminetti* v. *Pacific Mut. Life Ins. Co.,* 22 Cal.2d 344, 353-354 [139 P.2d 908]; *First Congregational Church* v. *County of Los Angeles,* 9 Cal.2d 591, 594 [71 P.2d 1106].)

The language of subdivision (t) is clear on its face and requires no construction. To adopt appellant's view, one would have to add something to the statute which is not there, i.e., a requirement of notoriety. ■ Where the words of a statute are clear, an appellate court should not add to or alter

such words to accomplish a purpose that does not appear on the face of the statute or from its legislative history. (*Vallerga* v. *Department of Alcoholic Beverage Control*, 53 Cal.2d 313, 318 [1 Cal.Rptr. 494, 347 P.2d 909]; *People* v. *Knowles*, 35 Cal.2d 175, 183 [217 P.2d 1].) There is nothing in the legislative history to indicate that the statute should be construed in the manner contended.

To follow appellant's argument to an end result would be to indulge in an absurdity. Thus, in order to take punitive action against an employee under subdivision (t), the employing agency would in effect have to publicize the fact that it had in its midst an errant employee. Or viewed from another way, an offending employee could not be disciplined under subdivision (t) so long as his misdeeds were kept "within the family" and no damage was proved to be done to the agency's "image." Such was surely not the intent of the Legislature.

Subdivision (t) refers to conduct which would reflect discredit on the employing agency or the position held by the person engaging in such conduct, regardless of whether publicized or not.

The first 19 subdivisions of section 19572, (a) through (s), list specific kinds of conduct which, if committed, constitute causes for discipline. It is obvious that they do not exhaust the kind of conduct which can be detrimental to state service. Subdivision (t) relates to "other failure of good behavior" and is a catchall to include situations and acts which do not easily fit into the 19 specific causes. The failure of good behavior must be of such a nature that it reflects upon the employee's job and cannot be just any behavior which the agency might consider improper.

Appellant contends that damage to *reputation* of the employee or the agency is the evil punishable by subdivision (t) and that necessarily to come within the subdivision the employee's conduct must be known to the public. The section, however, deals with the conduct of state employees and not with the extent of publicity which that conduct may attract. The hearing officer and the board felt that "fixing" a ticket best fitted into the category of conduct proscribed by subdivision (t). Such conduct clearly is the sort of behavior which would cause discredit to the Highway Patrol and to the State Traffic Officer. Appellant seems to contend that this conduct is harmless so long as it is kept secret. Not a single instance can be imagined in which a state employee's conduct would be

considered harmful to the state only if publicized and known by others but harmless if not so known.

Appellant urges that a literal interpretation of the word "causes" be adopted. ■ "The literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole." (*Silver* v. *Brown* (1966) 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689].) To interpret subdivision (t) as suggested by appellant would bring about absurd results and destroy the manifest purpose of subdivision (t), as we have hereinbefore set forth.

■ It is the duty of this court to uphold the findings of the board if supported by substantial evidence. (*Shepherd* v. *State Personnel Board* (1957) 48 Cal.2d 41, 46 [307 P.2d 4].) All legitimate and reasonable inferences must be drawn in support of such findings. (*Sweeney* v. *State Personnel Board* (1966) 245 Cal.App.2d 246, 251 [53 Cal.Rptr. 766].)

If appellant's contention that the officer's dereliction must be known in order to be a violation of subdivision (t) is correct, the evidence shows that it was known to a number of persons. Appellant admits he "fixed" Festersen's citation. This fact justifies the inference that this act caused discredit in the minds of all those persons who knew of it—Officer Chapman, the clerk, the officers in the investigation, the Commissioner of the California Highway Patrol, the judge of the traffic court, the man to whom appellant gave the citation to be returned to Festersen, Festersen, some of the latter's employees. Appellant's act could very well continue to cause discredit to the patrol and to appellant himself in the future.[1]

■ 2. "Ticket fixing" covered by subdivision (t).

In *Shepherd* v. *State Personnel Board, supra,* 48 Cal.2d 41, the board found the defendant guilty of violation of certain subdivisions of section 19572, Government Code. On hearing in the superior court, the court supported the board's finding that he was guilty of "acts either during or outside of duty hours which are incompatible with or inimical to the public service" (subdivision (s) as it then read). His offense was receiving payment from present or prospective meat plant

---

[1]It is interesting to note the statement in appellant's opening brief, "Nor would the knowledge of Festerson be a basis for holding that appellant's conduct resulted in damage to reputation. Appellant's conduct was performed because of Festerson's request, and most likely Festerson thought more of appellant because of his attempt to help him." We do not comment.

owners, whose plants he was required to inspect, for construction and remodeling plans which he prepared outside of duty hours.

The reviewing court upheld the board's determination as to acts which occurred prior to the amendment in 1949 of section 19251, saying that the subdivision, as it existed prior to such amendment, prohibited state employees from engaging in "incompatible activities."

Prior to its amendment in 1949, section 19251 provided "A State officer or employee shall not engage in any other activity or enterprise inconsistent, incompatible, or in conflict with his duties as a State officer or employee." As amended in 1949,[2] the Supreme Court held that the section required that the appointing power prescribe those activities which for state employees would be "considered inconsistent, incompatible or in conflict with their duties. . . ." The court then held that as to Shepherd's activities in making plans for plants he was required to inspect, engaged in subsequent to the amendment, he could not be disciplined under subdivision (s) of section 19572 because of the fact that the appointing power had not prescribed, as required by section 19251, what activities would be considered inconsistent, incompatible or in conflict with their duties.

---

[2]Section 19251, Government Code, as amended in 1949, provided:
"A state officer or employee shall not engage in any employment, activity, or enterprise which has been determined to be inconsistent, incompatible, or in conflict with his duties as a state officer or employee or with the duties, functions or responsibilities of his appointing power or the agency by which he is employed.

"Each appointing power shall determine and prescribe, subject to approval of the board, those activities which, for employees under his jurisdiction, will be considered inconsistent, incompatible or in conflict with their duties as state officers or employees. In making this determination the appointing power shall give consideration to employment, activity or enterprise which: (a) involves the use for private gain or advantage of state time, facilities, equipment and supplies; or the badge, uniform, prestige or influence of one's state office or employment or, (b) involves receipt or acceptance by the officer or employee of any money or other consideration from anyone other than the State for the performance of an act which the officer or employee, if not performing such act, would be required or expected to render in the regular course or hours of his state employment or as a part of his duties as a state officer or employee or, (c) involves the performance of an act in other than his capacity as a state officer or employee which act may later be subject directly or indirectly to the control, inspection, review, audit or enforcement by such officer or employee or the agency by which he is employed.

"Each state officer and employee shall during his hou.. of duty as a state officer or employee and subject to such other laws, rules or regulations as pertain thereto, devote his full time, attention and efforts to his state office or employment."

Appellant contends that this ruling in *Shepherd* applies here and, therefore, as there has been no rule prescribed that "fixing tickets" by a highway patrolman would be considered "failure of good behavior . . . of such a nature that it causes discredit to his agency or his employment" he cannot be found guilty of a violation of subdivision (t) of section 19572.

However, it is apparent from a study of section 19251 that it applies only to activities which involve employment or work incompatible with state service and the acceptance of moneys therefor.

Section 19572, subdivision (t), is much broader than that. The other subdivisions cover a number of matters, none of which would appear to cover ticket fixing. Subdivision (t) states, "Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment." Obviously it would be impossible for the department to list all of the types of acts which could violate this provision. There are many acts other than those set forth in subdivisions (a) to (r) of section 19572, inclusive, which are so inherently wrong and reprehensible that they need not be listed by the agency in order for them to constitute failure of good behavior bringing discredit upon the department or the officer himself. Certainly "ticket fixing" is one of these. The department cannot operate if its officers are to "fix tickets;" the very integrity of the department and its members would be gone and the morale of the patrolmen destroyed. Inherent in the position of a patrolman is his knowledge, without being told, that "fixing a ticket" is a violation of good behavior and one which would bring discredit upon himself and the department.

The judgment is affirmed.

Pierce, P. J., and Regan, J., concurred.