[Civ. No. 11620. Fourth Dist., Div. Two. Apr. 27, 1972.]

JOSEPH J. BLAKE, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD et al., Defendants and Respondents.

544

COUNSEL

Rich & Ezer and Mitchel J. Ezer for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Lynn Henry Johnson, Assistant Attorney General, for Defendants and Respondents.

OPINION

TAMURA, J.—Petitioner appeals from a judgment denying a peremptory writ of mandate to compel respondents to reinstate him to his former position as supervising deputy labor commissioner of the Division of Labor Law Enforcement (Division) of the State Department of Industrial Relations (Department) and to restore to him all of the rights and benefits, including lost compensation, which would have accrued to him had he not been dismissed from his employment.

Petitioner has been a civil service employee of the state continuously from November 1949. Prior to his dismissal he had advanced to and occupied the position of supervising deputy labor commissioner. In November 1968 he was served with a notice of dismissal charging that the alleged acts of misconduct hereafter described constituted grounds for dismissal under the following subdivisions of Government Code, section 19572:[1] Discourteous treatment of other employees (m), failure of good behavior outside of duty hours of such a nature that it caused discredit to his agency (t), and inefficiency (c). Petitioner demanded and was accorded an administrative hearing before a referee of the State Personnel Board (Board).

The referee made the following findings concerning the alleged acts of misconduct with which petitioner was charged:

## "III

"On October 10, 1968 appellant had an investigator under his supervision travel from Long Beach to San Diego for no real reason connected with state business. It is true that the investigator did spend about two hours on state business out of the two days involved in the trip but this small task would not begin to justify or even explain this trip.

---

[1]Government Code, section 19572, provides as follows:
"Each of the following constitutes cause for discipline of an employee, or person whose name appears on any employment list:
"(a) Fraud in securing appointment.
"(b) Incompetency.
"(c) Inefficiency.
"(d) Inexcusable neglect of duty.
"(e) Insubordination.
"(f) Dishonesty.
"(g) Drunkenness on duty.
"(h) Intemperance.
"(i) Addiction to the use of narcotics or habit-forming drugs.
"(j) Inexcusable absence without leave.
"(k) Conviction of a felony or conviction of a misdemeanor involving moral turpitude. A plea or verdict of guilty, or a conviction following a plea of nolo contendere, to a charge of a felony or any offense involving moral turpitude is deemed to be a conviction within the meaning of this section.
"(l) Immorality.
"(m) Discourteous treatment of the public or other employees.
"(n) Improper political activity.
"(o) Willful disobedience.
"(p) Misuse of state property.
"(q) Violation of this part or board rule.
"(r) Violation of the prohibitions set forth in accordance with Section 19251.
"(s) Refusal to take and subscribe any oath or affirmation which is required by law in connection with his employment.
"(t) Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment."

"Facts found in this Finding III at best constitute inefficiency within the meaning of Government Code Section 19572 (c).

## "IV

"In May 1966 appellant was Vice President of the California State Employees' Association and attended a meeting in San Diego of the officers of the Association. On two occasions during this meeting appellant displayed a .38 caliber revolver in a holster.[2] On the first occasion appellant took the gun from his attache case in a manner calculated to draw the attention of the President of the Association to the weapon and then returned it to the case. On the second occasion a few minutes later appellant again took the revolver from his attache case, held it up so the Junior Past President of the Association could see it, looked at the man and said, 'This is for you Bob.' Appellant did not on either occasion point the revolver at anyone or remove it from its holster.

"Appellant contends that the gun happened to be in his attache case and was inadvertently displayed in the process of removing documents. This contention is found to be not true.

"Appellant's conduct as found in this Finding IV constitutes failure of good behavior outside of duty hours within the meaning of Government Code Section 19572 (t).

## "V

"In October 1968 all eight attorneys employed by the Division of Labor Law Enforcement attended the annual convention of the State Bar of California in San Diego. Following a late dinner on October 8, 1968 five of the attorneys, including two women attorneys, had two rounds of drinks at a bar at their motel. Appellant joined this group in the bar. When two of the men attorneys and the two women attorneys left in a car to return to their respective rooms on the sprawling motel grounds they discovered that appellant was following them in his car even through several wrong turns caused by the confusing arrangement of the numerous structures on the property. After the women were dropped off at their room, the men drove to the area of their own rooms and parked the car. One of them noticed that appellant had stopped his car a short distance away.

"The two men walked over to appellant's car to find out what was going

---

[2]The record reveals that by virtue of petitioner's position, he was authorized to possess and carry a gun.

on. After they got to the car appellant, seated inside, pointed a revolver at one of the attorneys and told him in obscene terms to 'stay away from [Miss X],' or words to that effect, referring to one of the women attorneys. While continuing to point the gun at him appellant went on to tell the attorney that he (appellant) knew what was going on, that 'his boys' had told him a couple of 'punks' had been in the company of [Miss X] and that he did not want the attorney fooling around with [her]. As the attorneys were leaving appellant put the gun in the glove compartment of his car.

"Appellant contends that he was afraid the two men might attack him and that he felt it was necessary to use the gun to protect himself. This contention is found to be not true.

"Appellant also contends that the gun was a plastic toy he had found in his car. Even if true, this contention would in no way excuse appellant's conduct. Whatever his means or weapon, appellant intended to and did cause the two attorneys to fear for their very lives while he was making his downright irrational charges.

"Facts found in this Finding V constitute cause for punitive action under the provisions of Government Code Section 19572 (m)."

Based upon the foregoing findings, the referee concluded that the gun-display incident at the CSEA meeting described in Finding IV constituted cause for discipline but was too stale to warrant the drastic punitive action of dismissal and that the "inefficiency" found in Finding III merited some disciplinary action but not of the severity of dismissal. However, the referee concluded that the gun-pointing incident described in Finding V was cause for discipline under subdivision (m)[3] and "in and of itself" warranted dismissal.[4] Accordingly, the referee recommended that the action taken

---

[3]All references to statutory subdivisions are unless otherwise indicated to subdivisions of Government Code, section 19572.

[4]The referee stated his conclusions as follows:

"Appellant is 53 years old and has had no prior punitive action taken against him in his more than 13 years with the Division of Labor Law Enforcement. Considering appellant's employment record, the gun incident at the CSEA meeting would not, at least at this late date, warrant his dismissal. Also the inefficiency found in Finding III would warrant a punitive action substantially less severe than dismissal. But the conduct found in Finding V is just more than any state agency or its employees can be expected to put up with. It is a very serious matter for the Department of Industrial Relations to dismiss a man of appellant's age from a specialized supervisory position after many years of service. However, appellant's conduct as found in Finding V is such an extreme departure from reasonable standards as to fully warrant, in and of itself, the punitive action of dismissal."

by the appointing power be sustained without modification. The Board adopted the referee's findings and decision and upheld petitioner's dismissal from service. Petitioner's application for rehearing was denied and the present mandamus proceeding ensued.

In his petition for writ of mandate petitioner attacked the decision of the Board on the following grounds: The decision was not supported by substantial evidence; the punitive action of dismissal was excessive as a matter of law; and the referee who presided over the administrative hearing was biased and prejudiced. The matter was heard on the merits on the administrative record which was received in evidence. Following submission the court made an interlocutory order remanding the matter to the Board for clarification of its findings in the following respects:

"(i) Whether or not at the time the 'gun-pointing incident' of October 18, 1968 occurred, Petitioner had come into contact with attorneys Gianini and Phillips by reason of his employment as a Supervising Deputy Labor Commissioner with the Division of Labor Law Enforcement of the Department of Industrial Relations of the State of California; and

"(ii) Whether or not Petitioner's said conduct at said time toward Attorneys Gianini and Phillips resulted in harm to the public service."

On remand the Board referred the matter to the referee, who, after further hearings but without taking additional evidence, recommended the following additional findings:

"1. It is found that at the time of the gun-pointing incident of October 18, 1968 appellant had come into contact with Attorneys Gianini and Phillips by reason of his employment as a Supervising Deputy Labor Commissioner. It was because of this employment that appellant was able to join the group of Labor Law Enforcement attorneys in the motel bar. The record discloses no connection or acquaintance between appellant and the two attorneys other than as state employees.

"2. It is found that appellant's conduct toward Attorneys Gianini and Phillips did result in harm to the public service. Appellant's conduct would cause Gianini and Phillips to fear their lives could be in jeopardy should appellant misinterpret any future contacts they might have in the course of their work with their fellow Labor Law Enforcement Attorney, [Miss X]. Such a situation is intolerable in public or private employment." The recommended findings were adopted by the Board and certified to the superior court.

Following certification of the additional findings, the court reopened the matter, heard further arguments, and rendered its decision. It found

that the Board's findings, including the additional findings on remand, were supported by substantial evidence; that petitioner's conduct described in the Board's Finding V, as supplemented by the amended findings, constituted "discourteous treatment of . . . employees," within the meaning of subdivision (m); that the imposition of the punitive act of dismissal did not constitute an abuse of discretion; that the hearing officer presiding at the administrative hearing was not biased or prejudiced against petitioner and that petitioner was accorded a full and fair administrative hearing. Judgment was entered denying a peremptory writ of mandate. Petitioner appeals from the judgment.

Respondents virtually concede, as they must, that petitioner's dismissal must stand or fall on the sufficiency of the gun-pointing incident to constitute cause for discipline under subdivision (m). Petitioner admits there was substantial evidence to support the administrative findings that the incident occurred at the time and under the circumstances therein described but contends: (1) The misconduct was not a valid cause for disciplinary action under subdivision (m) because it occurred during off-duty hours and pertained to a personal matter unrelated to the employment; (2) the use of the incident as a basis for disciplinary action constitutes an infringement upon petitioner's constitutional right of privacy; and (3) the penalty of dismissal from service was excessive as a matter of law. For the reasons which follow we have concluded that petitioner's contentions (1) and (2) are unmeritorious. However, we have concluded that the penalty imposed was excessive and that the matter must be remanded to the Board for redetermination of the penalty.

I

Petitioner candidly admits that the gun-pointing incident was reprehensible and inexcusable and that to characterize it as "discourteous treatment" is to put it most charitably. He maintains, however, that the incident did not constitute cause for discipline under subdivision (m) because it occurred during off-duty hours and related to a private matter. He urges that subdivision (m) must be construed as a proscripton against mistreatment of another employee only during duty hours.

Respondents suggest, although not enthusiastically, that the employees who were threatened by petitioner were "on duty" even while out on the town because they were at the State Bar convention on a state per diem, were using official cars and because the evening's social conversation included discussion of their work. While there was a nexus between the evening's unsponsored social activities and the employment, drinking,

dining and watching a floor show can hardly be called "working" or "discharging official business." Realistically viewed, petitioner's misbehavior must be deemed to have occurred during off-duty hours.

Whether misbehavior toward other employees outside of duty hours can form the basis for disciplinary action under subdivision (m) is a first impression issue. The only reported decisions of discipline under subdivision (m) have been those in which mistreatment of other employees occurred during working hours. (*Walker* v. *State Personnel Board,* 16 Cal.App.3d 550 [94 Cal.Rptr. 132]; *Neely* v. *California State Personnel Bd.,* 237 Cal.App.2d 487 [47 Cal.Rptr. 64]; *Batson* v. *State Personnel Board,* 188 Cal.App.2d 320 [10 Cal.Rptr. 452].) ⅂t by no means follows that subdivision (m) cannot extend to off-duty misconduct.

The conduct proscribed under subdivision (m), "discourteous treatment of . . . other employees," though more specific than such terms as "unprofessional" or "immoral" conduct, can literally extend over a wide range of conduct and thereby be subject to the constitutional objection of vagueness unless it is limited by guidelines which fairly apprise an employee of the type of misbehavior which may subject him to disciplinary action and against which his conduct may be rationally judged by courts and administrative agencies. (See *Morrison* v. *State Board of Education,* 1 Cal. 3d 214, 231 [82 Cal.Rptr. 175, 461 P.2d 375].) Obviously mere failure to observe common amenities at a social gathering is not the type of discourtesy contemplated by the statute. On the other hand, should a superior unjustifiably abuse a subordinate concerning the manner in which he performs his work and threatens his job, the mere fact that the misbehavior occurred outside of working hours ought not to immunize the misbehaving superior from disciplinary action under subdivision (m). To say that disciplinary action could not be taken for such misconduct simply because it occurred, for example, while the two were leaving the office or plant after the close of the business day or at a social gathering would be clearly contrary to the spirit and purpose of the statute.

█ The nature of the misbehavior and its effect on the public service rather than the time or place of its occurrence should be the determinative factors. If the misconduct bears some rational relationship to the employment and is of a character that can reasonably result in the impairment or disruption of public service, it should be no less a cause for discipline under subdivision (m) simply because it occurred outside of duty hours. In determining whether an employee should be disciplined, whatever the cause, the overriding consideration is whether the conduct harms

the public service. (*Shepherd* v. *State Personnel Board,* 48 Cal.2d 41, 50-51 [307 P.2d 4]; see *Norton* v. *City of Santa Ana,* 15 Cal.App.3d 419, 428 [93 Cal.Rptr. 37]; *Hayman* v. *City of Los Angeles,* 17 Cal.App.2d 674, 679 [62 P.2d 1047].) As aptly stated in *Norton* v. *Macy,* 417 F.2d 1161, 1165-1166, the sufficiency of charges for disciplinary action against a public employee "must be evaluated in terms of the effects on the service of what in particular he has done or has been shown to be likely to do."

▇ Measured by the above standards, we are satisfied that the facts as found by the Board reveal a sufficient nexus between the misconduct and the employment so that it may be reasonably inferred that the misconduct did have a deleterious effect upon public service. Although, as we have observed, those involved in the incident were not at the time actually "working," the attorneys were on a state per diem attending the State Bar convention as state employees. The female attorney to whom petitioner had a romantic attachment and the two male attorneys who were threatened by petitioner were members of the Division's legal staff. The evidence was sufficient to support the Board's finding that petitioner's misconduct resulted in harm to the public service in that it "would cause" the two male attorneys to be apprehensive of their safety should petitioner misinterpret their future contacts with the female attorney while in the performance of their official duties.

▇ In *Bodenschatz* v. *State Personnel Board,* 15 Cal.App.3d 775, 778 [93 Cal.Rptr. 471], we defined our function in reviewing a decision of the State Personnel Board as follows: "Respondent Board is a state-wide administrative agency deriving its adjudicating power from section 3 of article XXIV of the Constitution. Consequently, its factual determinations must be upheld by a reviewing court if they are supported by substantial evidence (*Shepherd* v. *State Personnel Board,* 48 Cal.2d 41, 46-47 [307 P.2d 4]) and all legitimate and reasonable inferences must be drawn in support of such findings (*Orlandi* v. *State Personnel Bd.,* 263 Cal.App.2d 32, 38 [69 Cal.Rptr. 177]; *Sweeney* v. *State Personnel Board,* 245 Cal. App.2d 246, 251 [53 Cal.Rptr. 766]). It is not our function to reweigh the evidence. (*Shepherd* v. *State Personnel Board, supra,* p. 46.)" The facts found by the Board were sufficient to constitute cause for discipline under subdivision (m).

▇ Petitioner suggests that the Legislature must have intended subdivision (m) to apply only to on-duty misconduct because had it intended (m) to extend to off-duty as well as on-duty conduct, it would have said so as it did in subdivision (t) pertaining to failure of good behavior causing discredit to the agency. The argument is unpersuasive. In subdivision (g)

the Legislature made "drunkenness on duty" a ground for discipline but in subdivision (h) "intemperance" alone is cause for discipline. The only reasonable interpretation of subdivision (h) is that "intemperance," whether on-duty or off-duty, which impairs the employee's ability to discharge his duties is cause for discipline. Subdivision (m) should be given a like construction. Where the mistreatment bears a rational relationship to the employment and results in harm to the public service, it is cause for discipline. The entire statute must be given a reasonable and common sense interpretation, one that will further the legislative purpose of empowering appointing authorities to take disciplinary measures for misconduct which disrupts or impairs the public service.

## II

Petitioner urges his dismissal for the gun-pointing incident would constitute an infringement on his constitutional right of privacy. The contention is devoid of merit.

■ It is true that a public employee, even one serving at the pleasure of the appointing authority, may not be dismissed from his employment for the exercise of his constitutional rights absent a showing that the restraint which the appointing authority would impose on the exercise of those rights is justified by compelling public necessity. (*Bogacki* v. *Board of Supervisors,* 5 Cal.3d 771, 778-779 [97 Cal.Rptr. 657, 489 P.2d 537], and cases there cited.) It is also true that a public employee may not be disciplined for what he does in his private life so long as such conduct does not impair public service or cause discredit to his agency. (See *Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214, 223-230.) But as our Supreme Court stressed in *Board of Education* v. *Swan,* 41 Cal.2d 546, 556 [261 P.2d 261], and iterated as recently as in *Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214, 222: " 'One employed in public service does not have a constitutional right to such employment and is subject to reasonable supervision and restriction by the authorized governmental body or officer *to the end that proper discipline may be maintained, and that activities among the empolyees may not be allowed to disrupt or impair the public service.' "* ■ In the instant case petitioner was not disciplined for his private romantic affair with the female attorney; he was dismissed for threatening other state employees with a lethal weapon for their association with the female attorney who was also a state employee. Such egregious conduct under the circumstances in which it occurred in the instant case cannot be deemed a purely private matter; it was one which was of legitimate concern to the employing state agency.

### III

Finally, petitioner urges that the penalty of dismissal was excessive as a matter of law.

■ It is settled that the propriety of a penalty imposed by an administrative agency is a matter resting in the sound discretion of the agency and that its decision will not be disturbed unless there has been an abuse of discretion. (*Harris* v. *Alcoholic Bev. etc. Appeals Bd.,* 62 Cal.2d 589, 594 [43 Cal.Rptr. 633, 400 P.2d 745]; *Martin* v. *Alcoholic Bev. etc. Appeals Bd.,* 52 Cal.2d 287, 293-294 [341 P.2d 296]; *Macfarlane* v. *Dept. Alcoholic Bev. Control,* 51 Cal.2d 84, 90 [330 P.2d 769]; *Brown* v. *Gordon,* 240 Cal.App.2d 659, 666 [49 Cal.Rptr. 901]; *Hopper* v. *State Personnel Board,* 204 Cal.App.2d 273, 275 [22 Cal.Rptr. 88].) ■ Legal discretion means an impartial discretion taking into account all relevant facts, together with legal principles essential to an informed and just decision. ■ The term "judicial discretion" has been defined as " 'an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, *to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' "* (Italics supplied.) (*Martin* v. *Alcoholic Bev. etc. Appeals Bd.,* 55 Cal.2d 867, 875 [13 Cal.Rptr. 513, 362 P.2d 337], quoting from *Bailey* v. *Taaffe,* 29 Cal. 422, 424.) ■ The fact that reasonable minds may differ as to the propriety of the penalty imposed will fortify the conclusion that the administrative body acted within the area of its discretion. (*Harris* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 62 Cal.2d 589, 597.) On the other hand, if the penalty imposed was under all the facts and circumstances clearly excessive, the court is not powerless to act. (*Magit* v. *Board of Medical Examiners,* 57 Cal.2d 74, 87-88 [17 Cal.Rptr. 488, 366 P.2d 816].)

■ The following facts compel the conclusion that the imposition of the maximum penalty of dismissal in the instant case was clearly excessive.

Petitioner is 53 years of age and has been in state service since 1949. During his entire civil service career he has never suffered disciplinary action of any kind; his employment record is exemplary and is replete with commendations for meritorious service; his outstanding qualities have been recognized by his promotion to his position of supervising deputy labor commissioner.

In determining whether the misconduct warranted dismissal, considera-

tion should be given to the circumstances surrounding the misbehavior, the degree to which it affected the public service and the likelihood of its recurrence. In the instant case while we have concluded that a reasonable inference could be drawn from the evidence to support the Board's finding of harm to the public service, there was no direct testimony from the two male attorneys that their work relationship with the female attorney was affected. The record reveals that the two male attorneys were from the Department's San Francisco office and the female attorney from the Long Beach office. Moreover, while the circumstances of its occurrence by no means excused petitioner's reprehensible conduct, it must be recalled that it did occur after a social evening during which the group had had several drinks during dinner and later at a bar. The following morning petitioner called the two attorneys, apologized, and acknowledged to them the fact that his conduct the night before was unjustified and inexcusable and that it would not recur. At the hearing petitioner testified that his relationship with the female attorney had been terminated, that he had sold his gun and no longer owned one and gave assurances that the incident would not recur.

■ We note also that the State Personnel Guide to Employee Discipline, a copy of which was received in evidence, suggests penalties for a first offense under subdivision (m) of a "warning" and a maximum of a "letter of reprimand." While the manual does not circumscribe the agency's discretion and penalties in excess of those suggested would not be unreasonable as a matter of law, the manual is evidence of the Board's policy and may, therefore, be properly considered in determining whether the penalty imposed in the instant case was excessive as a matter of law. (See *Harris* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 62 Cal.2d 589, 597.)

■ Considering all relevant factors, it is our conclusion that while petitioner's conduct at the State Bar convention in San Diego merited disciplinary action, the maximum penalty was clearly excessive for that single incident. The matter should be remanded to the Board for reconsideration of the penalty.

The judgment is reversed and the trial court is directed to enter judgment commanding the State Personnel Board to set aside its decision of dismissal and to redetermine the proper penalty to be imposed in the light of this opinion.

Gabbert, J., concurred.

**GARDNER, P. J.**—I dissent.

I agree with the majority that the misconduct involved was a valid cause for disciplinary action under subdivison (m) of section 19572 of the Government Code, and that the use of this incident as a basis for disciplinary action was no infringement on petitioner's constitutional right of privacy. However, I dissent from the holding of the majority that the penalty of dismissal from the service is excessive as a matter of law.

The propriety of a penalty imposed by an administrative agency is a matter resting in the sound discretion of that agency and its decision will not be disturbed unless there has been an abuse of discretion.

I am not impressed by the fact that there is no "*direct testimony*" from the two male attorneys that their work relationship with the female attorney was or would be affected. An inference to that effect is a reasonable one. As the referee said, "Appellant's [petitioner's] conduct would cause Gianini and Phillips to fear their lives could be in jeopardy should appellant misinterpret any future contacts they might have in the course of their work with their fellow Labor Law Enforcement Attorney, [Miss X]. Such a situation is intolerable in public or private employment."

Nor am I particularly impressed by the fact that the petitioner said that his relationship with the female attorney had been terminated, that he had sold his gun and that the incident would not recur. I would hardly expect him to testify to the contrary. However, were I attorney Gianini or attorney Phillips, I am not sure that I would share the majority's faith in petitioner's representation.

Further, I think that in assessing the penalty, the Board was entitled to take into consideration all three of the incidents described in the majority opinion. It is true that the first two standing alone were not considered sufficient cause for dismissal. Nevertheless, having found grounds for discipline under the last incident, it appears to me that the Board was entitled to take into consideration petitioner's whole record—good and bad—when assessing the penalty.

When I add up the three incidents, I find no abuse of discretion in the action of the Board.

I would affirm the judgment of the trial court.

A petition for a rehearing was denied May 15, 1972, and respondents' petition for a hearing by the Supreme Court was denied June 22, 1972. Burke, J., was of the opinion that the petition should be granted.