[Civ. No. 15436. Third Dist. Jan. 26, 1977.]

JOYCE P. MAYNARD, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent.

234

**COUNSEL**

Loren E. McMaster and Allen R. Link for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Frank A. Iwama, Deputy Attorney General, for Defendant and Respondent.

## OPINION

EVANS, J.—The Department of Corrections dismissed appellant Maynard from her civil service position as a correctional officer at the California Medical Facility. After an administrative hearing, the State Personnel Board concurred in the factual findings of the hearing officer, but modified the punitive action to a six-month suspension and demotion from correctional officer to stenographer II. Maynard then filed a petition for writ of mandate with the Sacramento Superior Court to compel her reinstatement as a correctional officer. She appeals from the judgment denying the writ.

In its written notice of punitive action (Gov. Code, § 19574), the Department of Corrections charged Maynard with acts constituting "failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment." (Gov. Code, § 19572, subd. (t).)

After taking evidence, the hearing officer made written findings among which the following are pertinent:

"IV

"During the period July 20, 1973 through March 18, 1974 the appellant had numerous telephone conversations with her ex-husband's present girl friend. In the course of these telephone calls she directed threats towards the woman and the woman's children.

"On October 12, 1973, during the course of a telephone conversation, the appellant threatened to throw acid on her ex-husband's girl friend and her children. On March 18, 1974 she threatened to 'stick' her and have members of the Mexican Mafia take care of her. The appellant's ex-husband's girl friend complained to the police and a tape recorder was placed on her telephone. The appellant's telephone conversations including threats were recorded.

"V

"A warrant was issued for the arrest of the appellant for the crime of violating Section 653m (a) of the California Penal Code. Trial is presently pending on that complaint."

The findings in total were adopted by the State Personnel Board.

On this appeal, Maynard asserts three contentions:

1. That the evidence is insufficient to support the factual finding forming the basis for the punitive action.

2. There is an insufficient nexus between her employment position and conduct to support the punitive action taken.

3. The punishment imposed is excessive and constitutes an abuse of discretion.

I

She first attacks the sufficiency of the evidence to support the findings and the resulting punitive action.

Factual determinations of the State Personnel Board—an agency which was created by, and derives its adjudicating power from, the state Constitution—" 'are not subject to re-examination in a trial de novo but are to be upheld by a reviewing court if they are supported by substantial evidence.' " (*Martin* v. *State Personnel Bd.* (1972) 26 Cal.App.3d 573, 577 [103 Cal.Rptr. 306].)

While reviewing the evidence placed before the State Personnel Board, the superior court exercises the same function as this court. (*Martin* v. *State Personnel Bd., supra*; *Neely* v. *California State Personnel Bd.* (1965) 237 Cal.App.2d 487, 489 [47 Cal.Rptr. 64].) Neither court may reweigh the evidence, and we are bound to consider the evidence in the light most favorable to the board, giving it every reasonable inference and resolving all conflicts in its favor. (*Gee* v. *California State Personnel Bd.* (1970) 5 Cal.App.3d 713, 717 [85 Cal.Rptr. 762].)

The evidence presented more than meets the quantitative and qualitative tests of sufficiency in support of the findings and the punitive action taken.

The record reveals that in 1966, appellant married Don Maynard. The marriage was an extremely stormy one, ending in divorce in 1971. Their relationship throughout the period of the marriage was marked by physical and verbal abuse.

In 1973, following her divorce, Mrs. Maynard was appointed a correctional officer and assigned to the California Medical Facility at Vacaville. Beginning in July 1973, Mrs. Maynard began making threatening phone calls to Mr. Maynard's girl friend Stella Waklee. Ms. Waklee received the calls at home and at her place of employment. She testified that, "Statements that were made over the telephone were that she was going to throw acid on my children's faces. That is the way it started out. Secondly, she was going to throw acid on my face. Thirdly, that she was going to use the gun against us. Fourthly, that she was using the inmates at the Vacaville Facility; that she had told them all about me and they knew it and that they were letting people on the outside know about me; and that the Mexican Mafia was going to get hold of me and a contract had been put out to have me stuck, something like that, and also that the people on the inside were using her to get things done on the outside and, vice versa, that the people on the outside were using her to get to do things for the inmates, and by doing this they were using me as a tool, and so this is how I was being threatened."

On October 12, 1973, Ms. Waklee received another threatening phone call from Mrs. Maynard. She testified to its substance as follows: "That was a Friday and she called me at work, and she proceeded to tell me that things had to be taken care of; that she wasn't going to suffer any more for the sake of me and that my kids were going to suffer; that one way of making me suffer was to have acid thrown in my children's faces and she knew where they went to school; she knew all about me; she knew everything about my children and they were going to suffer; that she had lots of friends and she knew how to do things."

Ms. Waklee reported the incident to the police department, and on October 15, 1973, signed a formal misdemeanor complaint.

On October 22, 1973, a Pacific Telephone electronics expert placed a pin register on Mrs. Maynard's telephone to record numbers dialed over the line as well as the date and time of each call. The register was removed October 29, 1973, and disclosed the following pattern of

telephone calls from Mrs. Maynard's home to Ms. Waklee's residence and office telephone numbers:

| | |
|---|---|
| October 22, 1973 | 1 telephone call |
| October 24, 1973 | 5 telephone calls |
| October 25, 1973 | 3 telephone calls |
| October 26, 1973 | 4 telephone calls |
| October 27, 1973 | 6 telephone calls |
| October 28, 1973 | 1 telephone call |

Additional telephone calls were testified to by Ms. Waklee in which Mrs. Maynard threatened to take Ms. Waklee's life and to do great harm to her children. A tape recording of a conversation between Ms. Waklee and Mrs. Maynard on October 21, 1973, was introduced and played at the hearing. Mr. Maynard identified the voices on the tape as those of Mrs. Maynard, Ms. Waklee and himself. Ms. Waklee also identified the voices. The evidence in support of the finding is not insubstantial.

Mrs. Maynard, however, attacks the sufficiency of the evidence presented by the witnesses identifying the voices in the tape recording. Mrs. Maynard's identity as the telephone caller was more than adequately established. Prior familiarity with the person's voice is not the *sine qua non* for admission of testimony identifying that person as one with whom the witness had a telephone conversation.

"For the purpose of admitting in evidence a communication over the telephone, it is necessary to first require proof of the identity of the individual with whom it is held. The identity of the person may be established by proof of recognition of his voice, *or by other circumstances which satisfactorily indicate the identity of the* individual. . . .

" '. . . Slight circumstances will suffice for this purpose, however.' " (Italics added.) (*People* v. *Lorraine* (1938) 28 Cal.App.2d 50, 54 [81 P.2d 1004]. See also *People* v. *Roy* (1967) 251 Cal.App.2d 459, 464 [59 Cal.Rptr. 636]; *People* v. *Cannedy* (1969) 270 Cal.App.2d 669, 676-677 [76 Cal.Rptr. 24].)

" ' "The identity of the person may be established by proof of recognition of [her] voice, *or by other circumstances which satisfactorily indicate the identity of the individual.*" ' " (Italics in original.) (*People* v. *McGaughran* (1961) 197 Cal.App.2d 6, 16 [17 Cal.Rptr. 121].)

It was established in the administrative proceeding that the woman placing the telephone calls to Ms. Waklee in each instance identified herself as Mrs. Maynard. Ms. Waklee identified the voice in the tape recorded conversation as Mrs. Maynard as did Mr. Maynard who had prior personal knowledge of Mrs. Maynard's telephone voice. The only reasonable inference to be drawn from all of the testimony is that the person placing the telephone call to Ms. Waklee was Mrs. Maynard. The weight of such testimony is for the trier of fact (*People* v. *Cannedy, supra,* 270 Cal.App.2d at p. 677) and was decided adversely to appellant.

## II

Mrs. Maynard argues that there was an insufficient nexus between the failure of her good behavior and the finding of discredit to the agency or employment to justify disciplinary action. The type of conduct depicted by the record does not support the contention. To the contrary, that conduct appears to be of the type found by prior decisions to warrant imposition of some form of discipline.

In *Nightingale* v. *State Personnel Board* (1972) 7 Cal.3d 507 [102 Cal.Rptr. 758, 498 P.2d 1006], a referee employed by the Division of Industrial Accidents intervened with other referees and the Attorney General in an effort to obtain special treatment for a friend; on appeal, the court noted that the conduct had a potentially destructive effect on the appearance of impartiality of her employer agency. The court at pages 512-513 stated, "[I]t is difficult to believe that appellant, however innocently motivated, could not appreciate in advance that her proposed conduct would constitute a 'failure of good behavior' likely to bring discredit to her employer. Consequently, we conclude that subdivision (t) is neither vague nor uncertain on its face or in application to the instant case."

In *Orlandi* v. *State Personnel Bd.* (1968) 263 Cal.App.2d 32 [69 Cal.Rptr. 177], the court details the content and effect of section 19572 as follows:

"The first 19 subdivisions of section 19572, (a) through (s), list specific kinds of conduct which, if committed, constitute causes for discipline. It is obvious that they do not exhaust the kind of conduct which can be detrimental to state service. Subdivision (t) relates to 'other failure of

good behavior' and is a catchall to include situations and acts which do not easily fit into the 19 specific causes. The failure of good behavior must be of such a nature that it reflects upon the employee's job and cannot be just any behavior which the agency might consider improper.

"Appellant contends that damage to *reputation* of the employee or the agency is the evil punishable by subdivision (t) and that necessarily to come within the subdivision the employee's conduct must be known to the public. The section, however, deals with the conduct of state employees and not with the extent of publicity which that conduct may attract. The hearing officer and the board felt that 'fixing' a ticket best fitted into the category of conduct proscribed by subdivision (t). Such conduct clearly is the sort of behavior which would cause discredit to the Highway Patrol and to the State Traffic Officer. Appellant seems to contend that this conduct is harmless so long as it is kept secret. Not a single instance can be imagined in which a state employee's conduct would be considered harmful to the state only if publicized and known by others but harmless if not so known." (Italics in original.) (Pp. 37-38.)

The statute involved is addressed to the conduct of the employee, not to the publicity that conduct might attract. As was stated by the *Nightingale* court at page 513, "It would be logically absurd, . . . to permit misconduct so long as it was kept 'within the family,' or to require that an agency publicize the misdeeds of an employee in order to be able to discipline him. . . . 'The failure of good behavior must be of such a nature that it reflects upon the employee's job and cannot be just any behavior which the agency might consider improper.' "

To have a correctional officer working from inside the prison in an intimidating manner, threatening to utilize the assistance of inmates and their friends on the outside to perpetrate a crime is obviously improper and can reasonably be expected to raise doubts among the citizenry about the security of the correctional establishment and the integrity of its employees. The nexus between Mrs. Maynard's failure of good conduct and her duties is more than sufficient to justify discipline.

III

Finally, Mrs. Maynard contends that the penalty of suspension and demotion is too harsh as a matter of law and constitutes an abuse of discretion. Upon this question, reasonable minds might easily differ;

under the circumstances presented, the matter is one within the sound discretion of the administrative agency and its decision will not be disturbed either by the trial or appellate courts in the absence of a manifest abuse of discretion. (*Nightingale* v. *State Personnel Board, supra,* 7 Cal.3d at pp. 514-516; *Vielehr* v. *State Personnel Bd.* (1973) 32 Cal.App.3d 187, 196 [107 Cal.Rptr. 852].)

The judgment denying the petition is affirmed.

Puglia, P. J., and Friedman, J., concurred.