[Civ. No. 4857. Fifth Dist. Apr. 16, 1980.]

PATRICK J. STANTON, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent.

**COUNSEL**

Hansen & Hansen, Robert F. Hansen and Marilyn Hansen for Plaintiff and Appellant.

George Deukmejian, Attorney General, and David W. Halpin, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**ZENOVICH, J.**—Appellant appeals from an order denying a peremptory writ of mandamus to compel respondent to set aside a decision in which it imposed a 5 percent reduction in salary against appellant for a period of three months.

Appellant has been employed as a state psychiatric technician continuously from sometime in 1960. Prior to the punitive action taken by respondent, he had served in the position of senior psychiatric technician II for ward No. 22 at the Atascadero State Hospital. On April 12,

1977, he was served with a notice of punitive action charging that the alleged acts of misconduct hereafter described constituted grounds for discipline under the following subdivisions of Government Code section 19572:[1] inefficiency (c), willful disobedience (o), and failure of good behavior either during or outside of duty hours of such a nature that it caused discredit to his agency (t). After filing an answer to said notice, appellant demanded and was accorded an administrative hearing before a hearing officer of the State Personnel Board (hereinafter referred to as Board). After taking evidence, the hearing officer made written findings among which the following are relevant:

"III

"On March 29, 1977 the appellant was on duty as Senior Psychiatric Technician II in charge of Ward #22. A 22 year old mentally disturbed and assaultive patient became unmanageable in the main hallway adjacent to the dining room. The appellant and two other Psychiatric Technicians had to restrain the patient. While holding the patient down prior to applying wrist cuffs, the appellant had his hand on or about the patient's throat. He used his hand to push the patient back to the floor whenever the patient attempted to get up. The patient was very loud and protested about being choked. Other patients became visually agitated during the restraining procedures. The situation was explosive and dangerous to both staff and patients.

"IV.

"A Psychiatric Technician observing the struggle reported the incident and stated that the appellant had choked the patient. In a later conversation about the incident, the appellant threatened the Psychiatric Technician that reported the incident with loss of his job if he continued to allege patient abuse. The appellant is a supervisor and should not have made such threats."

---

[1]Government Code section 19572 provides in pertinent part: "Each of the following constitutes cause for discipline of an employee, or person whose name appears on any employment list:

"(c) Inefficiency.

"(o) Willful disobedience.

"(t) Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment."

Based upon the foregoing findings, the hearing officer concluded that appellant was not guilty of any patient abuse warranting punitive action. The officer specifically determined that his actions did not cause any physical injury to the patient and that he merely used his hands to restrain the patient on the floor until wrist restraints could be applied by other personnel. Nonetheless, the officer ruled that the threats to the other employee were a sufficient basis for discipline under the Government Code.[2] The administrative officer specifically concluded that: "...his threats to the other employee cannot be condoned. Mental patients must be treated in a kind and considerate manner. Abuse of any type cannot be permitted and even the appearance of abuse must be fully investigated. The appellant's attempt to stop the investigation by threatening the other employee cannot be tolerated and warrants the punishment imposed upon him." Accordingly, the hearing officer recommended that punitive action be taken against appellant in the form of a 5 percent reduction in salary for a period of three months (eff. May 1, 1977). The Board adopted the hearing officer's findings and decision and upheld the punitive action assessed against appellant.

Appellant then filed the petition for writ of mandate with the San Luis Obispo County Superior Court to compel the Board to set aside its decision and invalidate the punitive action taken against him. The superior court thereafter denied the petition and upheld the disciplinary action of the Board.

Appellant first contends that the superior court erred in not undertaking a de novo review of the evidence at the administrative hearing and in not exercising its independent judgment about the weight to be placed on such evidence. We are not persuaded.

It is firmly established that the Board is a statewide administrative agency deriving its adjudicative powers from the California Constitution; accordingly, its factual determinations must be upheld by a reviewing court if they are supported by substantial evidence, with all legitimate and reasonable inferences drawn in support of such findings. (*Shepherd* v. *State Personnel Board* (1957) 48 Cal.2d 41, 47 [307 P.2d 4]; *Warren* v. *State Personnel Board* (1979) 94 Cal.App.3d 95, 105 [156 Cal.Rptr. 351]; *Vielehr* v. *State Personnel Bd.* (1973) 32 Cal. App.3d 187, 190 [107 Cal.Rptr. 852]; *Gee* v. *California State Person-*

---

[2]Although he did not specify which statutory provision he was relying upon, it appears implicit from his legal conclusions that the hearing officer was holding the threat to be a violation of section 19572, subdivision (t), of the Government Code.

*nel Bd.* (1970) 5 Cal.App.3d 713, 717 [85 Cal.Rptr. 762].)[3] The factual determinations of the Board are not subject to reexamination in a trial de novo, but are reviewed under the substantial evidence test. (*Shepherd* v. *State Personnel Board, supra*, 48 Cal.2d at pp. 46-47.) Nonetheless, appellant suggests that an administrative decision affecting constitutional rights must be examined by a reviewing court under the independent judgment standard. Since speech (threats by the appellant) was involved in the present case, it is contended that *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242] precludes application of the substantial evidence test where the administrative decision substantially affects constitutionally protected rights.[4] An identical argument was rejected in the decision of *Martin* v. *State Personnel Bd.* (1972) 26 Cal.App.3d 573 [103 Cal.Rptr. 306]. The court noted: "Martin's [the petitioner in that case] reliance upon *Bixby* is misplaced. That case was concerned with the review of decisions of statewide agencies which are *not* constitutionally authorized to exercise judicial functions. [Citation.] The *Bixby* opinion expressly pointed out that it did not involve 'a statewise agency upon which the California Constitution has specifically conferred adjudicative powers.' [Citation.]" (*Martin, supra*, at p. 577.) Since the Board does derive adjudicative power from the state Constitution, the *Martin* court reaffirmed the viability of applying the substantial evidence test to its findings. (*Ibid.*) Applying the analysis of *Martin*, we are of the opinion that the trial court committed no error in reviewing the Board's determinations under the substantial evidence standard of review.[5]

---

[3]*Shepherd* was the seminal case recognizing that adjudicative power was vested in the Board. (*Shepherd* v. *State Personnel Board, supra*, 48 Cal.2d at p. 47.) The court based this upon the provisions of former article XXIV, section 3, subdivision (a) of the California Constitution and Government Code sections 19578 and 19582. (*Shepherd, supra*, at p. 47.) It is noteworthy that former article XXIV, section 3, subdivision (a), was repealed in 1976. Nonetheless, it was substantially reenacted in its entirety that same year as article VII, section 3, subdivision (a) of the state Constitution. (See 2 West's Ann. Code to Cal. Const. (1979 cum. pocket pt.) art. VII, § 3, p. 137.) In addition, Government Code section 19582 still allows the Board to hold hearings and render decisions which are, in its judgment, just and proper; this language parallels the statutory provision affirmatively cited in *Shepherd*. Thus, the adjudicatory powers of the Board are still firmly based upon both constitutional and statutory mandates.

[4]In *Bixby*, the court held that trial courts must utilize the independent judgment rule when examining administrative decisions affecting fundamental vested rights (such as the practice of one's trade or profession). (See *Bixby* v. *Pierno, supra*, 4 Cal.3d at pp. 143-147.)

[5]Recently, the *Bixby* decision was assessed by our high court in *Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770 [163 Cal.Rptr. 619, 608 P.2d 707]. There, the court held that the independent judgment rule was to be applied when the California Unemployment Insurance Appeals Board made a decision impacting

Appellant then contends that the trial court erred in refusing to make factual findings in this matter. We disagree.

■ A trial judge is not required to make findings of fact when it is not acting de novo under the independent judgment standard; where the substantial evidence rule applies, the trial judge does not independently weigh evidence and make his own findings but merely determines a question of law—i.e., whether the evidence is legally sufficient. (*Savelli v. Board of Medical Examiners* (1964) 229 Cal.App.2d 124, 131 [40 Cal.Rptr. 171], cert. den. (1965) 380 U.S. 934 [13 L.Ed.2d 821, 85 S.Ct. 940] (criticized on other grounds in *Martin v. State Personnel Bd., supra,* 26 Cal.App.3d at pp. 580-583).) So long as the Board made adequate findings, there is no need for development of a further record by the reviewing court. (See *Robinson v. State Personnel Bd.* (1979) 97 Cal.App.3d 994, 1003-1004 [159 Cal.Rptr. 222].) Even if appellant was entitled to a fair disclosure of the superior court's determination (see Cal. Rules of Court, rule 232(e)), we are satisfied that the order denying the petition in the present case adequately set forth the rationale of the trial court in sustaining the Board's findings.

Appellant then contends that the Board's decision is not supported by substantial evidence. We are not persuaded.

■ When reviewing the evidence placed before the Board, the superior court exercises the same function as this court. Neither court may reweigh the evidence, and we are bound to consider the evidence in the light most favorable to the Board, giving it every reasonable inference and resolving all conflicts in its favor. (See *Maynard v. State Personnel Bd.* (1977) 67 Cal.App.3d 233, 237 [136 Cal.Rptr. 503].)

The record shows that Psychiatric Technician Trainee Gerald Hendrix observed appellant applying pressure with his hand on the throat of a patient named "Larry" on March 29, 1977. Both appellant and Hendrix were employees at the Atascadero State Hospital, with appellant occu-

upon employees' unemployment insurance reserve accounts. (*Id.,* at pp. 775, 780.) Nothing in the opinion, however, abrogates application of the substantial evidence test to agencies vested with judicial power. In a footnote quoting *Bixby,* the *Interstate Brands* court carefully noted that: "The ultimate question in each case is whether the affected right [for purposes of the independent judgment rule] is deemed to be of sufficient significance to preclude its extinction or abridgement *by a body lacking judicial power.*" (*Interstate Brands v. Unemployment Ins. Appeals Bd., supra,* 26 Cal.3d at p. 779, fn. 5, italics added.) Thus, the court implicitly recognized that the substantial evidence test governed administrative bodies vested with judicial power by the state Constitution. (See also *id.,* at p. 782 (conc. opn. of Clark, J.).)

pying the rank of senior psychiatric technician II in charge of ward No. 22. In regard to the March 29 incident, Hendrix said that "the patient was gagging and choking and trying to get out from underneath the [appellant's] hand,..." Hendrix was upset by his observations and mentioned the incident to Marshall Nichols, a fellow employee. Nichols advised Hendrix to talk to John Beaton, Hendrix' supervisor, about appellant's actions. Later in the afternoon, a meeting was called to discuss the incident; the participants at this meeting were Hendrix, appellant, Beaton and Dan Sullivan (a program director at the state hospital). During the course of the meeting, Hendrix related that appellant made a comment concerning his job status at the state hospital. Specifically, Hendrix testified as follows: "He [appellant] said that if I chose to write a formal complaint that he would be forced to defend himself. And I asked him what he meant by that and he said, 'Well, just what I said. If you make a complaint I'm going to have to do anything I can to defend myself and if it comes down to a matter of my losing my job or your losing your job, you will lose your job.'" In response to appellant's comment, Hendrix informed him that "You just made up my mind." Thereafter, Hendrix proceeded to file a formal report of the incident. When asked if he felt threatened by the statement, Hendrix replied: "Yes, to a certain extent. Not really a whole lot threatened because I didn't think he had the power to do it. Well, I was hoping he didn't have the power to do it."

Beaton and Sullivan also described appellant's conduct during the meeting. Beaton testified that appellant told Hendrix, "'If you insist on making a formal complaint and it comes down to you losing your job, or I losing my job, you'll lose yours.'" Beaton further opined that the remark was inappropriate for a man in appellant's position and that Hendrix, in his estimation, took the comment as a threat. In his testimony about the meeting, Sullivan offered the following scenario of events: "The discussion started as an information-giving, fact-finding, trying to understand where each person was in reference to observing the situation. The interview was approximately 20 minutes long, of which the first 15 minutes was positive. At the point that Mr. Hendrix began to do some soul searching, or thinking about the total situation, he made the comment of, 'I don't know what to do. If I turn you in—' referring to Mr. Stanton—'and it is an abuse and it's thought to be abuse, then you may lose your job. If I don't turn it in, then I can be held as an accomplice to the abuse, and I can lose my job.'" At that point, Mr. Stanton said: "'If it comes to your losing your job or my losing mine, it's not going to be mine.'

"At that point, we stopped the interview because Mr. Hendrix said, 'Thank you very much, Mr. Stanton. Now you've made up my mind for me. I take that as a threat. I'm going to report it.'" Sullivan opined that appellant's comment was an inappropriate response in light of his position as a senior employee. Sullivan also noted that, prior to the comment forming the basis of the disciplinary action, appellant suggested to Hendrix that he might be working on his ward for an upcoming three-month period. On another occasion, Sullivan testified that Hendrix said, "'For all I know, I may be having to work with you [appellant] in the future'"; appellant responded "'About three months you will be'" and then uttered the remark about "'your job or mine.'"

Stanton offered his own independent version of the circumstances underlying the alleged threatening remark. Stanton noted that he initially made out a special incident report to Sullivan, informing him about Hendrix' displeasure with the way he handled a certain patient. During the progress of the meeting with the supervisors, Stanton indicated that he attempted to explain his actions to Hendrix, who responded by acting as if "'I'm right and you're wrong.'" Stanton said he uttered the comment because he was frustrated about Hendrix' unyielding attitude. Furthermore, he indicated that he did not intend to threaten Hendrix in any fashion. Appellant conceded that he told Hendrix that there was a possibility he would be working under appellant's direction. Nonetheless, appellant related that he said: "...if I have to defend myself to save my job that I would try to get his..." and "I would do my best to see that that [that he got fired] happened,..." Appellant stated that he did not feel his response was improper because "Everything was going very quickly at the time," "Adrenalin [was] flowing," and "Things [were] happening very fast." Appellant also stated that Hendrix apparently interpreted his comment as a threat because of what he said at the time.

Carl Ricard, a nursing coordinator, testified that appellant told him that he "didn't feel that he had intimidated the employee [Hendrix], ..." Two other employees at the scene of the alleged patient's abuse expressed the opinion that appellant's actions established a potentially dangerous situation in light of the angry responses from spectator patients. Employee George Wall opined that the situation could have escalated into a riot due to the number of hostile patients observing the incident.

In challenging the substantiality of the evidence, appellant specifically argues that the record does not support a finding that his comment was either intended as a threat or that a reasonable person would interpret it as such. Instead, he contends that his remark merely expressed the possibility that he would defend himself if an administrative proceeding was initiated against him. Furthermore, he suggests that the comment was understandable in light of the tension inherent in the meeting between himself and Hendrix. Although his version is a plausible interpretation of the evidence, we are of the opinion that the record supports the determination that a threat was uttered. Sullivan testified that the threat was preceded by appellant's references to the likelihood of Hendrix becoming employed under his direction. In addition, the testimony of Hendrix, Beaton, and Sullivan established that appellant threatened the job status of Hendrix; that Hendrix decided to file a complaint in response to the threat; and that Hendrix interpreted the comment as a threat. Appellant himself also expressed the opinion that Hendrix may have accepted his comment as a threat. Based upon this testimony, we find that it was reasonable for the hearing officer, Board, and trial court to characterize appellant's comment as an adverse threat. (See *Maynard* v. *State Personnel Bd., supra,* 67 Cal.App.3d at p. 240.)

By analogy to cases involving criminal or contractual duress, appellant contends that proof of a threat requires intentional conduct and a reasonable likelihood that an objective person would interpret it as an adverse comment. We disagree.

Government Code section 19572, subdivision (t), demands only that there be a failure of good behavior adversely reflecting upon the employee's job; the statutory provision does not require that the conduct amount to the equivalent of a threat under duress law. The critical questions under subdivision (t) are whether (1) there is a connection between the offensive conduct and the employee's duties, and (2) whether the uttered threats would risk impairment or disruption of public services in the state hospital. Having determined the relevant inquiries, we now address these issues.

We are of the opinion that discipline pursuant to subdivision (t) must be based on more than failure of good behavior; it must be of such a nature as to reflect upon the employee's job. This subdivision has been interpreted as meaning that the misconduct must bear some rational re-

lationship to his employment and must be of such character that it can easily result in the impairment or disruption of the public service. (*Warren* v. *State Personnel Board, supra,* 94 Cal.App.3d at p. 104; *Vielehr* v. *State Personnel Bd., supra,* 32 Cal.App.3d at p. 192.) The legislative purpose behind subdivision (t) was to discipline conduct which *can be detrimental* to state service. (See *Nightingale* v. *State Personnel Board* (1972) 7 Cal.3d 507, 512 [102 Cal.Rptr. 758, 498 P.2d 1006]; *Gee* v. *California State Personnel Bd., supra,* 5 Cal.App.3d at pp. 720-721; *Orlandi* v. *State Personnel Bd.* (1968) 263 Cal.App.2d 32, 40 [69 Cal.Rptr. 177].) It is apparent that the Legislature was concerned with punishing behavior which had *potentially destructive consequences,* rather than concentrating upon intentional conduct.

Although appellant's comments may have been uttered without scienter, they are nonetheless punishable under subdivision (t). There is a sufficient nexus between the threatening comments and appellant's duties at the state hospital. ■ The evidence sufficiently established that appellant's misconduct resulted in harm to the public service in that it would either deter an investigation into patient abuse (a critical function of the state hospital) or that it would make Hendrix apprehensive of his job security (thereby lowering his potential work performance). As a senior employee, appellant was to establish confidence in his supervisorial actions; his threats to Hendrix in the meeting undercut the confidence which could be placed upon his authority. As noted by the superior court in its order denying the writ petition, such a threat "if permitted would detract from the level of administrative discipline which the hospital setting requires."

Given the importance of appellant's supervisorial status and the necessity for investigation of complaints about patient abuse, there was a sufficient connection between the failure of appellant's good behavior and the potential discredit to his employment so as to justify the punitive action imposed. Furthermore, disciplinary action was proper under subdivision (t) in light of the potential impact of appellant's conduct upon the state service.

■ Appellant next contends that the Board was impermissibly disciplining comments arising out of a meeting which was called for the purpose of airing views on a work-related incident. Essentially, his contention is based on two arguments: (1) the Board was disciplining the constitutionally protected activity of free speech; and, assuming that

speech can be disciplined, (2) the punished activity did not easily risk impairment or disruption of the public service. We are not persuaded.

At the outset, we are of the opinion that the Board has authority to discipline certain types of protected behavior, including speech, under subdivision (t). This point was recognized by the court in *Blake* v. *State Personnel Board* (1972) 25 Cal.App.3d 541 [102 Cal.Rptr. 50]. In *Blake*, the petitioner urged that his dismissal for pointing a gun at another state employee constituted an infringement of his constitutional right of privacy. The court noted that even constitutionally sanctioned behavior could be disciplined when it had egregious effects: "It is true that a public employee, even one serving at the pleasure of the appointing authority, may not be dismissed from his employment for the exercise of his constitutional rights absent a showing that the restraint which the appointing authority would impose on the exercise of those rights is justified by compelling public necessity. [Citations.] . . . But as our Supreme Court stressed in *Board of Education* v. *Swan*, 41 Cal.2d 546, 556 [261 P.2d 261], and iterated as recently in *Morrison* v. *State Board of Education*, . . . 1 Cal.3d 214, 222 [82 Cal.Rptr. 175, 461 P.2d 375]: "'One employed in public service does not have a constitutional right to such employment and is subject to reasonable supervision and restriction by the authorized governmental body or officer *to the end that proper discipline may be maintained, and that activities among the empolyees [sic] may not be allowed to disrupt or impair the public service.*'"" (*Blake* v. *State Personnel Board, supra*, 25 Cal.App.3d at p. 552.)

Respondent aptly points out that threatening forms of conduct can be punished by the Board. In *Blake* v. *State Personnel Board, supra*, 25 Cal.App.3d 541, the court recognized that an incident in which a petitioner pointed a gun and uttered threatening words constituted a cause for discipline under Government Code section 19572, subdivision (m). The court, in dicta, indicated that "a superior [who] unjustifiably abuse[s] a subordinate concerning the manner in which he performs his work and [who] threatens his job" could be subject to disciplinary action under section 19572. (*Blake, supra*, at p. 550.) A similar decision was reached in *Maynard* v. *State Personnel Bd., supra*, 67 Cal.App.3d 233. *Maynard* involved a state employee who directed a series of threats to her ex-husband's present girl friend and the woman's children. The state employee threatened to harm the woman through the Mexican Mafia; in addition, she threatened to have acid thrown in the

faces of the woman's children. (*Id.*, at pp. 236-239.) Under these circumstances, the *Maynard* court had no difficulty in sustaining the punitive action undertaken against the employee under subdivision (t). Although the threats in the present case were not as pernicious as those in *Blake* and *Maynard*, they were within the ambit of misconduct punishable under subdivision (t).

Having determined that some forms of speech can be disciplined under subdivision (t), appellant presents the alternative argument that the threat did not risk impairment or disruption of the public service. As noted earlier, this prerequisite has prevented subdivision (t) from being declared unconstitutionally vague. (See *Nightingale* v. *State Personnel Board, supra*, 7 Cal.3d at pp. 511-513.)

Appellant primarily relies upon *Adcock* v. *Board of Education* (1973) 10 Cal.3d 60 [109 Cal.Rptr. 676, 513 P.2d 900] for the proposition that his speech cannot be disciplined by the Board. *Adcock* was a case in which a high school teacher was transferred to another school because of his open and persistent criticisms of rules and policies in his original school. Most of his criticisms were made at convocations of parents, teachers and students, sponsored by the school, which were called "open forums" and existed for the purpose of openly discussing subjects of "pressing interest" to the school community. A trial court issued a writ on the basis that the transfer effectively denied Adcock his First Amendment freedoms, and the Supreme Court affirmed this determination. (*Id.*, at pp. 65, 68-69.) Our high court stated: "It is settled that a teacher's right to speak is constitutionally protected as long as it does not result in any disruption, or impairment of discipline or materially interfere with school activities." (*Id.*, at p. 65.) Appellant seizes upon this passage as support for his position. However, a careful reading of the *Adcock* case shows that freedom of speech is not constitutionally protected if it results in disruption or impairment of public or school activities. Since this same caveat attaches to disciplinary action under subdivision (t), we do not believe *Adcock* compels a different result in the case at bar.

 Although appellant's words may have been uttered in a milieu of frustration and pressure, they could have easily resulted in impairment of public service at the state hospital. Since the threats were tied to appellant's prior statements about potential supervision over Hendrix, the abusive comments had the potential to stifle a subsequent investiga-

tion of patient abuse observed by Hendrix. An investigation would be impeded due to Hendrix' fear that appellant might find a way to fire him if he filed a complaint. Notwithstanding the fact that Hendrix did file a complaint, there was the potential that hospital discipline would be undermined through appellant's threats. Furthermore, the ripple effects of such threatening comments might quell some future investigations because of other employee's fears of sanctions from superordinates.

A hindrance to investigatory activities has been recognized as disruptive of public service in the case of *Warren* v. *State Personnel Board, supra*, 94 Cal.App.3d 95. In that case, the Board dismissed a highway patrolman who had attended and participated in a sexual act in an advertised commercially sponsored transvestite party for which he paid an attendance fee. (*Id.*, at pp. 99, 102-103.) In gauging whether the patrolman's conduct was potentially disruptive, the court affirmatively reasoned: "The harm to the public service is evident. Appellant's actions would tend to reflect adversely concerning him and his agency, hinder the legitimate law enforcement activities of another police agency, and hinder his own agency's investigation of the incident. Appellant's conduct could create barriers to the cooperation necessary among different law enforcement agencies, and could hamper his ability to work effectively within his own agency." (*Warren* v. *State Personnel Board, supra*, 94 Cal.App.3d at p. 108.) Given the fact that the activities by appellant in the case at bar could similarly chill the operational efficiency of the state hospital, we are of the opinion it was proper to impose disciplinary action under Government Code section 19572, subdivision (t).

In summary, we hold the threats by appellant were properly punished under Government Code section 19572, even though they were within the range of behavior protected by the First Amendment. Therefore, since speech which impairs or disrupts the public service can be disciplined by the Board, we find there was no infringement of appellant's constitutional right of free speech.

■ Appellant finally contends that the penalty imposed by the Board was excessive as a matter of law in light of the isolated nature of the threat and his outstanding work record. (Cf. *Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 700 [139 Cal.Rptr. 700, 566 P.2d 602].) We disagree.

In a mandamus proceeding to review an administrative order, the determination of the penalty by an administrative body will not be disturbed on appeal in the absence of a manifest abuse of discretion. (See *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 217 [124 Cal.Rptr. 14, 539 P.2d 774]; *Nightingale* v. *State Personnel Board, supra*, 7 Cal.3d at pp. 514, 516; *Vielehr* v. *State Personnel Bd., supra*, 32 Cal.App.3d at p. 196.) In considering whether such abuse occurs in the context of public employee discipline, we assess such factors as the risk of a repeated harm to the public service, the circumstances surrounding the misconduct, and the likelihood of its recurrence. (See *Skelly* v. *State Personnel Bd., supra*, 15 Cal.3d at p. 218.) The fact that reasonable minds may differ as to the propriety of the penalty imposed fortifies the conclusion that the administrative body acted within the area of its discretion. (*Blake* v. *State Personnel Board, supra*, 25 Cal. App.3d at p. 553.)

With these principles in mind, we are unable to conclude that it was an abuse of discretion to sanction an employee who had been found to have uttered a potentially disruptive threat. Notwithstanding appellant's outstanding work record and the possibility that the threat was atypical, we are of the opinion that a 5 percent reduction in salary for a three-month period was reasonable.

The judgment is affirmed.

Franson, Acting P. J., and Condley, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.