[No. A026713. First Dist., Div. Five. Apr. 29, 1985.]

ROBERT YANCEY, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
DEPARTMENT OF CORRECTIONS,
Real Party in Interest and Respondent.

480

COUNSEL

Douglas N. Smith and Worthington, Smith, Marshall & Schotte for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Talmadge R. Jones, Deputy Attorney General, for Defendant and Respondent and for Real Party in Interest and Respondent.

## OPINION

HANING, J.—Appellant Robert Yancey appeals from a judgment denying his petition for writ of mandate to compel respondent State Personnel Board (Board) to vacate its decision to terminate Yancey's employment as a correctional officer at the California Medical Facility at Vacaville (CMF) after he was found off duty wearing female underclothing. We conclude the findings of the Board are legally inadequate to support a dismissal and reverse.

Lanny Vance and Len Cimino, City of Fairfield police officers, were on special duty to make security checks in residential and school areas where there had been incidents of burglary. As they pulled into the parking lot of an elementary school at approximately 10 p.m., they saw a figure running westerly in the yard area. Officer Vance accelerated the patrol car, and the figure ran into the bushes in front of a fence separating the school grounds from the residential area. The officers apprehended appellant wearing thongs, female undergarments and an unbuttoned white cotton shirt. No other persons were in the area. Appellant identified himself; his residence was adjacent to the west school fence. The officers detained appellant for questioning, determined he had committed no crime, and released him.

Officer Vance made a report of the incident and referred a copy to CMF. He felt "the capacity that [appellant] was working in that it should be brought to the attention of the [sic] superiors . . . ." Vance also felt that appellant had at all times been completely truthful and straightforward with the officers, and that he did not conceal any information. Vance testified at the subsequent hearing he "really didn't think [the report] would go this far."

As a result of this incident, appellant was dismissed pursuant to Government Code section 19572 subdivision (t),[1] which permits discipline of an

---

[1]Unless otherwise indicated, all further statutory references are to the Government Code.

employee for "failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to the appointing authority or the person's employment." The matter was heard before a Board hearing officer, who made the following pertinent findings: "[Appellant] was considered a good Officer and had no blemishes on his prior seven-year employment record. However, it must be found that the dismissal action was warranted. [par.] [Appellant] has attributed his wearing of female clothing to job-related stress which he now feels he can handle. But it must be recognized that this incident is widely known at the institution and would as a practical matter cause [appellant] to have great difficulty in working with other Correctional Officers and inmates. This in itself would create a difficult if not impossible situation and in addition would place [appellant] in an atmosphere far more stressful than the normal job circumstances which existed at the time of the . . . episode. [par.] The Department [of Corrections] just cannot be required to run the risk of employing [appellant] in a stressful security position when his reaction to stress is so unusual."

■ The Board adopted the hearing officer's findings and decision. Appellant's petition for rehearing was denied, whereupon he filed his petition under Code of Civil Procedure section 1094.5, seeking a writ of mandate restoring his job. The trial court correctly determined it was obligated to apply the substantial evidence test in reviewing the Board's decision; it found the evidence supported the Board's decision and denied relief.

Appellant's contention that the independent judgment test is the basis for review of the Board's action cannot be sustained. "It is firmly established that the Board is a statewide administrative agency deriving its adjudicative powers from the California Constitution; accordingly, its factual determinations must be upheld by a reviewing court if they are supported by substantial evidence, with all legitimate and reasonable inferences drawn in support of such findings." (*Stanton* v. *State Personnel Bd.* (1980) 105 Cal.App.3d 729, 734 [164 Cal.Rptr. 557] and citations therein.) This is true even if a vested right is affected by the Board's decision. (*Id.*, at p. 735; see also *Goggin* v. *State Personnel Bd.* (1984) 156 Cal.App.3d 96 [202 Cal.Rptr. 587].) We therefore consider whether there was legally substantial evidence to support appellant's dismissal.

■ "Substantial evidence ' "must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with 'any' evidence. It must be reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular

case." ' [Citations.]" (*Lucas* v. *Southern Pacific Co.* (1971) 19 Cal.App.3d 124, 136 [96 Cal.Rptr. 356].)

■ There must be more than a failure of good behavior before the Board may discipline an employee under section 19572, subdivision (t). The misconduct must be of such a nature as to reflect upon the employee's job. In other words, the "misconduct must bear some rational relationship to his employment and must be of such character that it can easily result in the impairment or disruption of the public service. [Citations.] The legislative purpose behind subdivision (t) was to discipline conduct which *can be detrimental* to state service. [Citations.] It is apparent that the Legislature was concerned with punishing behavior which had *potentially destructive consequences.*" (*Stanton* v. *State Personnel Bd., supra,* 105 Cal.App.3d at pp. 739-740, italics in original.) The Legislature did not intend " '. . . to endow the employing agency with the power to dismiss any employee whose personal, private conduct incurred its disapproval.' " (*Warren* v. *State Personnel Bd.* (1979) 94 Cal.App.3d 95, 104 [156 Cal.Rptr. 351], citing *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 225 [82 Cal.Rptr. 175, 461 P.2d 375].)

■ Alvin Groupe, retired psychiatrist at Vacaville, who interviewed appellant once several weeks after the incident, and Brian Gunn, a 14-year veteran correctional officer with the Department of Corrections with the rank of captain, testified on behalf of the Board at the hearing. They both concluded the incident would make appellant a likely target for blackmail by the inmates and distrust by the officers, thereby creating dangerous situations for himself and other officers. On cross-examination they readily conceded that since the incident in question was known, the blackmail theory was unrealistic.

Groupe testified that appellant's problem was medical in nature—related to stress, and that he would be subject to manipulation by the inmates if the incident received notoriety within the institution because many inmates have the ability to "pick up a weakness or indiscretion to develop situations that could be—that are advantageous for them but could be dangerous to others." However, Groupe did not consider appellant to be homosexual, and he knew of nothing in appellant's character to indicate he was the sort to be blackmailed or otherwise manipulated. He believed the "big point" in deciding whether or not appellant could presently function as a corrections officer was how the other employees would respond to him. If appellant's fellow officers were willing to accept him "as he is, there would be no problem" of dangerous situations developing. Groupe had not interviewed or spoken with any of the correctional officers with whom appellant worked. He did not testify to any problems appellant had ever had on the job, and

stated that a seven-year unblemished record would indicate a correctional officer's ability to control his stress on the job.

As the Board found, appellant had worked successfully as a correctional officer for seven years prior to the incident with no negative reports in his service record.

Captain Gunn also offered his opinion that some inmates "might" assault appellant or attempt to manipulate him, and that other officers would resent working with him. However, like Doctor Groupe, Gunn had not discussed the case with any other officers with whom appellant worked. Appellant had maintained social contact with 20 to 30 of his former colleagues and testified that they all asked him when he was returning to work. He said none of them expressed any concern about his ability to function as a correctional officer.

Thus, although both Groupe and Gunn offered opinions about how this incident would affect appellant's job performance, neither of them presented any substantial factual evidence upon which their opinion was based. Appellant himself offered the only evidence about his relationship with his fellow officers. Groupe admitted that appellant's prior record was solid evidence of his ability to control stress on the job. Gunn's opinion about how other officers would react to appellant's return, if relevant, was wholly unsupported, since he had never discussed the situation with any other officers.[2] The thrust of Gunn's testimony was his opposition to what he considered to be the general perception of appellant's lifestyle, which he variously characterized as "strange" or "weird." ██ "The notion that a [correctional officer] may be dismissed on the sole basis that his lifestyle (sexual preference) is offensive to his fellow officers has no basis in law." (*Warren* v. *State Personnel Bd.*, *supra*, 94 Cal.App.3d 95, 104.)

██ The case before the Board was presented by Groupe and Gunn as though appellant were medically unable to handle the job. But it is important to realize that we are dealing not with a case of medical disability or retirement (see § 21020 et seq.), but with a *disciplinary* proceeding where *punitive* action was taken. A review of prior decisions under section 19572 confirms our conclusion that appellant is entitled to relief.

We look first at the following cases in which discipline was sought to be imposed only under subdivision (t) of section 19572, as in the instant case:

---

[2]Trial lawyers regularly remind juries that no opinion is better than the facts upon which it is based.

In *Nightingale* v. *State Personnel Board* (1972) 7 Cal.3d 507 [102 Cal.Rptr. 758, 498 P.2d 1006], a referee with the Division of Industrial Accidents had attempted to expedite a friend's compensation claim pending before that agency. The court noted the "destructive effect on the appearance of impartiality" (*id.*, at pp. 510, 516) this created, and upheld a 20-day suspension imposed by the Board.

*Parker* v. *State Personnel Bd.* (1981) 120 Cal.App.3d 84 [174 Cal.Rptr. 333] involved the dismissal of a group supervisor for the California Youth Authority who admitted the commission of a crime, and marijuana was found both growing and in loose form at his residence. In addition, he had a prior misbehavior problem involving wards under his control. His dismissal was upheld, with the court noting that correctional officers could be disciplined for violating laws which their employment requires them to enforce.

*Hooks* v. *State Personnel Bd.* (1980) 111 Cal.App.3d 572 [168 Cal.Rptr. 822] also involved a state correctional officer who admitted the commission of a crime. He was arrested in possession of approximately 9 grams of marijuana and 10 grams of hashish. His dismissal was upheld on the basis that his criminal conduct related to his duties as a correctional officer, since he was in charge of persons who were incarcerated for violation of the same laws.

In *Maynard* v. *State Personnel Bd.* (1977) 67 Cal.App.3d 233 [136 Cal.Rptr. 503], another correctional officer at CMF was disciplined for commission of criminal activity. She had been making threatening phone calls to her former husband's current girl friend and, inter alia, threatened to kill the woman and her children, threatened to throw acid on them, to "stick" the woman, to shoot her, and to have members of an infamous prison gang put out a "contract" on the woman's life. The court upheld a six-month suspension and a demotion from correctional officer to stenographer II.[3]

In *Vielehr* v. *State Personnel Bd.* (1973) 32 Cal.App.3d 187 [107 Cal.Rptr. 852], a state tax representative trainee with the Department of Human Resources Development was dismissed for his conviction of possession of marijuana while off duty. The court reversed and remanded the case to the trial court on the grounds that no obvious relationship existed between

---

[3]A comparison of the conduct in *Maynard* with the instant case, and the disparity of punishment imposed, highlights the Draconian penalty received by appellant herein.

possession of marijuana off duty and the duties of a tax representative trainee.

Finally, in *Orlandi* v. *State Personnel Bd.* (1968) 263 Cal.App.2d 32 [69 Cal.Rptr. 177], a highway patrol officer was dismissed for attempting to "fix" a ticket for a friend. The dismissal was upheld due to the obvious connection between the conduct of "ticket fixing," which the court characterized as "inherently wrong and reprehensible" (*id.*, at p. 40), and the duties of a highway patrol officer.

In other cases where subdivision (t) was relied upon as a basis for discipline, it was utilized in conjunction with other statutory grounds or subdivisions of section 19572.[4] These other grounds generally involve charges of dishonesty [subdivision (f)], insubordination [subdivision (e)], wilful disobedience [subdivision (o)] or conduct which is or was subject to criminal prosecution. None of the cases we have found has imposed punishment for medical reasons.[5]

---

[4]Section 19572 states: "Each of the following constitutes cause for discipline of an employee, or person whose name appears on any employment list: (a) Fraud in securing appointment. (b) Incompetency. (c) Inefficiency. (d) Inexcusable neglect of duty. (e) Insubordination. (f) Dishonesty. (g) Drunkenness on duty. (h) Intemperance. (i) Addiction to the use of controlled substances. (j) Inexcusable absence without leave. (k) Conviction of a felony or conviction of a misdemeanor involving moral turpitude. A plea or verdict of guilty, or a conviction following a plea of nolo contendere, to a charge of a felony or any offense involving moral turpitude is deemed to be a conviction within the meaning of this section. (l) Immorality. (m) Discourteous treatment of the public or other employees. (n) Improper political activity. (o) Willful disobedience. (p) Misuse of state property. (q) Violation of this part or board rule. (r) Violation of the prohibitions set forth in accordance with Section 19990. (s) Refusal to take and subscribe any oath or affirmation which is required by law in connection with the employment. (t) Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to the appointing authority or the person's employment. (u) Any negligence, recklessness, or intentional act which results in the death of a patient of a state hospital serving the mentally disabled or the developmentally disabled. (v) The use during duty hours, for training or target practice, of any material which is not authorized therefor by the appointing power."

[5]See, e.g., *Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395 [134 Cal.Rptr. 206, 556 P.2d 306] [California Youth Authority Counselor dismissed for dishonesty, wilful disobedience and other misconduct involving his possession of a watch which had been stolen from a ward under his supervision]; *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774] [physician with Department of Health Care Services dismissed for intemperance, inexcusable absences and other failures. Dismissal reversed as excessive]; *Fout* v. *State Personnel Bd.* (1982) 136 Cal.App.3d 817 [186 Cal.Rptr. 454] [CHP officer dismissed for activities involving child molestation and refusal to cooperate in the investigation thereof]; *Stanton* v. *State Personnel Bd.* (1980) 105 Cal.App.3d 729 [164 Cal.Rptr. 557] [psychiatric technician received a temporary reduction in salary for threatening a subordinate with loss of job if he reported the technician's assault on a patient]; *Szmaciarz* v. *State Personnel Bd.* (1978) 79 Cal.App.3d 904 [145 Cal.Rptr. 396] [correctional officer received five-month suspension for possession and use of marijuana, including one instance of possession on duty]; *Keely* v. *State Personnel Bd.* (1975) 53 Cal.App.3d 88 [125 Cal.Rptr. 398], disapproved on other grounds in (1976) 18 Cal.3d 395 [134 Cal.Rptr. 206, 556 P.2d 306] [correctional officer dismissed for wilful refusal to divest himself of ownership in liquor store, in direct violation of departmental rule]; *Kristal* v. *State Personnel Bd.*

When measuring appellant's conduct under the statute in light of existing precedent, one is struck by certain obvious distinguishing characteristics between the instant case and others where discipline was imposed. Appellant did not commit a criminal act, he was not wilfully disobedient, he did not violate any rule or regulation of the department, he was not dishonest, everyone agreed he was cooperative and completely candid in his disclosures, he was not insubordinate, and his prior work record was exemplary. None of this is disputed. Furthermore, although the record is not altogether clear on this point, the sole reason for appellant's behavior appears to be medical, and may have been caused in some degree by the job itself. It also appears to be transitory in nature.

■ Respondent is correct that reviewing courts do not disturb penalties imposed by the State Personnel Board unless there has been an abuse of discretion. (*Skelly* v. *State Personnel Bd.*, *supra*, 15 Cal.3d at p. 217.) ■ "Nevertheless, while the [Board] has a broad discretion in respect to the imposition of a penalty or discipline, 'it does not have absolute and unlimited power. It is bound to exercise legal discretion, which is, in the circumstances, judicial discretion.' [Citations.] ■ In considering whether such abuse occurred in the context of public employee discipline, we note that the overriding consideration in these cases is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[h]arm to the public service.' [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence. [Citation.]" (*Id.*, at pp. 217-218.)

■ On the basis of the record before us, we conclude that no substantial evidence exists that appellant is unfit for his employment, and that if any discipline is warranted, the penalty imposed was grossly excessive.

---

(1975) 50 Cal.App.3d 230 [123 Cal.Rptr. 512], disapproved on other grounds in (1976) 18 Cal.3d 395 [134 Cal.Rptr. 206, 556 P.2d 306] [teacher of emotionally and mentally disturbed children at state hospital dismissed for assaults on patients]; *Wilson* v. *State Personnel Bd.* (1974) 39 Cal.App.3d 218 [114 Cal.Rptr. 134] [employee of Department of Human Resources Development dismissed for violation of Unemp. Ins. Code § 2101]; *Marshall* v. *State Personnel Bd.* (1973) 31 Cal.App.3d 904 [107 Cal.Rptr. 738] [narcotics agents suspended for drinking alcoholic beverages in a vehicle on a public highway while on duty, in violation of departmental rules and state law]; *Blake* v. *State Personnel Board* (1972) 25 Cal.App.3d 541 [102 Cal.Rptr. 50] [supervising deputy labor commissioner threatened two fellow employees with a gun while off duty, warning them to stay away from another female employee with whom the deputy had a romantic attachment; his dismissal was reversed as excessive in light of his prior good record, his subsequent apologies and the fact that he was under the influence of alcohol at the time of the incident]; *Gee* v. *California State Personnel Bd.* (1970) 5 Cal.App.3d 713 [85 Cal.Rptr. 762] [state auditor dismissed for dishonesty and other misbehavior based on his actions in obtaining liquor licenses for friends].

The judgment is reversed and remanded for further proceedings in accordance with this decision.

Low, P. J., and King, J., concurred.

On May 29, 1985, the opinion was modified to read as printed above.