[No. F009365. Fifth Dist. Aug. 1, 1988.]

LEWIS RICHARDSON et al., Plaintiffs and Respondents, v.
BOARD OF SUPERVISORS OF MERCED COUNTY et al.,
Defendants and Appellants;
COUNTY OF MERCED et al., Real Parties in Interest and
Appellants.

COUNSEL

Dennis L. Myers, County Counsel, and Richard C. Burton, Deputy County Counsel, for Defendants, Real Parties in Interest and Appellants.

Bennett, Sharpe & Dupuis, Barry J. Bennett, Thomas M. Sharpe and Joby Dupuis for Plaintiffs and Respondents.

OPINION

BROWN (G. A.), J.*—In December1986, respondent, Lewis Richardson, was discharged from his employment as a deputy sheriff for Merced County

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

on the grounds of insubordination, being absent without leave, and being discourteous to fellow employees. On Richardson's appeal, the board of appeals, by a three-to-two vote, reduced the penalty to a two-month suspension.[1] Both parties appealed and the board of supervisors reinstated the penalty of termination.

Richardson filed a petition for a writ of mandate in the superior court seeking reinstatement to his former position. The court issued a judgment ordering the issuance of a peremptory writ of mandate directing the reinstatement of Richardson and the imposition of a penalty which is fair, just and reasonable and less than termination. Costs and attorney's fees were awarded to Richardson. The county appealed.

### FACTS

Prior to the incident in issue, Richardson had been a deputy sheriff for six and one-half years without any formal discipline and had received several commendations. On December 13, 1983, about 2:30 p.m., he was on patrol and stopped at a local market to buy cigarettes. On entering the market, Richardson heard someone shout a message to persons in the rear of the store. Richardson saw someone run out through the rear door of the market, saw other persons milling about, and thought he heard poker chips being gathered up. He investigated and discovered several open beer bottles. Richardson asked to see the owner's license. The license did not permit the on-premises consumption of alcohol. The owner, Mr. Zigarelli, responded that he was friends with Sheriff Amis and that Amis had been there drinking with them in the past. He also said that he supported and gave money to the sheriff's department. Because Richardson was uncertain of the exact violation, he called his supervisor (Edmondson) who agreed to meet him at a nearby park. At the meeting, Richardson told Edmondson what had transpired at the market including the owner's statement about the sheriff. According to Richardson, Edmondson advised him to find the most appropriate section and cite and release. Richardson then returned to the market and issued the citation. Several customers were present, and they and the owner made comments about being friends with the sheriff and indicated that the sheriff had been there drinking with them in the past.

Shortly after Richardson left the market, Zigarelli called Sheriff Amis and several of the customers visited the sheriff at his parent's house complaining about Richardson's conduct in issuing the citation. Sheriff Amis contacted Edmondson indicating he was "not too happy with that kind of

---

[1] The dissenting members believed that a penalty less than a two-month suspension without pay would have been appropriate.

work, Jim. That's uh, uh, like, hell, those guys have been doing, you know, it's the same five or six guys that have been sitting back there playing dominoes, and, uh, having beer for years." Sheriff Amis further stated: "I've known, you know, hell, I've been known to, you know, I know they've been doing it for 20 years. I mean, I've never seen them, what the hell, it's obvious what they're doing, you know."

Edmondson then summoned Richardson back to the sheriff's office. A heated confrontation between Richardson and Edmondson ensued. Richardson was very upset because Edmondson had told him to issue the citation and, after Edmondson received a telephone call from Sheriff Amis, Edmondson was criticizing Richardson for issuing the citation; he also felt that the sheriff was improperly interfering with his enforcement of the law stating at one point in substance, that this was the second ticket-fixing incident within nine days.

Although there was some dispute about what was said, both officers agreed that: (1) Edmondson criticized Richardson's handling of the incident; (2) Richardson asked if Sheriff Amis had called to which Edmondson responded that Amis had but that the content of the conversation was none of Richardson's business; (3) Richardson became very upset, claimed to be stressed out and unable to resume his duties and stated that the sheriff was interfering with his issuance of tickets; (4) Richardson stated that the sheriff had probably been drinking when he called in; (5) Edmondson refused to relieve Richardson from duty.

Richardson left Edmondson's office, went to his locker and in the process of changing his clothes, handed his badge to Edmondson. Edmondson asked if Richardson knew that handing over the badge constituted a resignation and Richardson said he did not. Richardson asked Edmondson several times to return the badge but Edmondson refused to do so unless Richardson agreed to return to work. Edmondson told Richardson not to leave the building.

Richardson followed Edmondson back to the sergeant's office and repeated his request that his badge be returned; Edmondson refused to return the badge stating that Richardson would have to return to duty. When Richardson repeated that he was unable to return to work, presumably because he was emotionally upset, Edmondson told Richardson that the badge could not be returned until two days later on Monday after Edmondson had spoken with "administration." Richardson then left the sheriff's department.

After leaving the sheriff's office, Richardson spoke with Dr. Lew Williams, a private therapist who performed contract psychotherapy services

for the Merced Sheriff's Department. They discussed the circumstances surrounding Richardson's departure from work for about 45 minutes. Richardson agreed to return to work and have Williams "ride along" with him in his patrol car.

Williams telephoned Edmondson and told him that Richardson would be returning to work and that they would be there in about 20 minutes. When Richardson arrived at the sheriff's department, he went into the locker room to change into his patrol uniform and was confronted by Edmondson and acting Lieutenant Carlson. Carlson and Edmondson demanded Richardson's service revolver, his county identification, and other equipment. Understanding that he had been fired, Richardson again left the building. His discharge was later confirmed by letter.

## DISCUSSION

The cause was submitted to both the board of supervisors (Board) and to the court on the record made before the board of appeals and arguments of counsel without receiving any additional evidence.

In reinstating the penalty of termination, the Board found that "the following facts as shown by the record, support the Sheriff's decision to terminate Deputy Richardson:

"1. Deputy Richardson was insubordinate to Sgt. Edmondson, a superior officer;

"2. Deputy Richardson left his duty assignment without being properly relieved of duty and against the orders of his superior officer; and

"3. Deputy Richardson made discourteous remarks about Sheriff William Amis. . . ."

At the conclusion of the hearing, the trial court rendered the following order: "THE COURT: The court finds that the officer was disobedient; he did not obey the order of the supervisor. He was gone from his office for a little over an hour. There was no danger to the County.

"The Court finds that the Board of Supervisors' findings are not supported by the evidence. The Petitioner's confrontation with the Sergeant was brought about by the Sheriff himself intermeddling with the lawful activities of his deputy on behalf of some citizen acquaintances. If he didn't want his deputy to police unlawful activities, which he has known for about 20 years,

he should have told him so. There was no opportunity for the deputy to relate his side.

"Termination took place with conflicting acts. This incident by a deputy who has an excellent record was a single, brief resolved problem in which no significant harm to the County was shown. The penalty imposed was grossly excessive.

"The Writ of Mandate will issue directly to the Board of Supervisors to set aside its decision. The County and the Sheriff are directed to restore the Petitioner to his position of employment with back pay and all benefits except a 30-day period commencing December 16th, 1986, and to remove the record of termination from his personnel and other records.

"And the Court further found that the Respondent acted arbitrarily and the Petitioner is to recover from the Respondent attorney fees in the amount of $1500 plus costs of suit."

In its subsequent formal order the court eliminated reference to the specific penalty to be imposed and in pertinent part stated: "1. Respondent Board of Supervisors of the County of Merced shall be directed to set aside its Decision in this matter, and to impose a penalty on Petitioner Richardson, at a level less than termination, which is fair, just and reasonable;

"2. Real Parties in Interest County of Merced and William Amis, directed to reinstate Petitioner Richardson to his former position of employment, subject to whatever fair, just and reasonable penalty is imposed by Respondent Board of Supervisors of the County of Merced on remand, to pay Petitioner Richardson all of his back pay and benefits except for the period of the suspension, if any, which Respondent Board of Supervisors adopts in conformity with Paragraph (1) above, and to correct all records of Real Party in Interest County to delete all references to the termination of petitioner Richardson, instead to reflect whatever fair, just, and reasonable penalty is imposed by Respondent Board of Supervisors on remand . . . ."

■ On appeal from the trial court's judgment, our task is to determine if substantial evidence supports the trial court's judgment and in doing so we must accept as true all evidence tending to establish the correctness of the findings as made, drawing all inferences which might reasonably have been drawn by the trial court to lead to the same conclusion. (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 343-344 [156 Cal.Rptr. 1, 595 P.2d 579]; *Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 697 [139 Cal.Rptr. 700, 566 P.2d 602].)

■ Because disciplinary proceedings affect a fundamental vested right, the trial court is required to exercise its independent judgment in its review of the Board's findings. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 44 [112 Cal.Rptr. 805, 520 P.2d 29]; *Martinez* v. *County of Tulare* (1987) 190 Cal.App.3d 1430, 1436 [235 Cal.Rptr. 851].) "Thus, the superior court reweighs the evidence and makes its own determination whether the administrative findings are sustained. ■ And, where the superior court overturns such findings and an appeal is taken, the reviewing court gives the superior court's judgment the same effect as if it were rendered by any ordinary trial in that court. 'In other words, on appeal the question is not whether the administrative determination was supported by the weight of the evidence, but whether, disregarding all contrary evidence, there is substantial evidence in support of the *trial court's findings.*' [Citations.] On appeal, after the superior court has applied its independent judgment to the evidence, all conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences made to uphold the superior court's findings; moreover, when two or more inferences can be reasonably deduced from the facts, the appellate court may not substitute its deductions for those of the superior court. [Citations.]" (*Toyota of Visalia, Inc.* v. *Department of Motor Vehicles* (1984) 155 Cal.App.3d 315, 325-326 [202 Cal.Rptr. 190].)

■ Exercising its independent judgment, the trial court concluded the Board's findings were not supported by the evidence. The court also found "The penalty imposed was grossly excessive." The court's findings clearly were supported. The court's finding that Richardson was disobedient in that he did not obey a superior's order is supported by Richardson's admission that he refused to return to his patrol unit in the face of Edmondson's order to do so. The trial court's finding that Richardson was gone a little over an hour is supported by Richardson's uncontradicted testimony regarding the length of the absence. The trial court's further finding that the altercation between Edmondson and Richardson was brought on by Sheriff Amis's interference with Richardson's lawful performance of his duties is supported by evidence of the telephone conversation between Amis and Edmondson in which Amis stated he knew the parties involved, knew that they had been drinking there "for 20 years" and his statement that "I'm not too happy with that kind of work, Jim." Finally, the trial court's finding regarding Richardson's excellent record over his long period of service and the isolated nature of the misconduct is supported by Richardson's unrefuted testimony regarding a lack of prior formal discipline and receipt of several commendations.

Though the court found the Board's findings were not supported by the evidence, its statement is nonspecific except to state that Richardson was

disobedient. Though the court does not specifically find that Richardson was not insubordinate, in support of the judgment we interpret the court's determination to be a finding of disobedience rather than insubordination. Further, it is conceded that Richardson did leave his duty station and made some discourteous remarks about Sheriff Amis. We interpret the court's findings, in this regard, to mean that the Board failed to give proper weight to the circumstances leading up to Richardson's conduct as tending to justify or at least mitigate the seriousness of his actions.

Although disobedience cannot be totally excused or justified, Richardson's outrage at being criticized by his superior, Edmondson, for issuing a citation to Zigarelli for breaking the law, which Edmondson had shortly before expressly told him to issue, is understandable. Exacerbating Richardson's sense of outrage is the fact that Edmondson, in the meantime, received a telephone call from Sheriff Amis disapproving of the issuance of the ticket because Zigarelli, a friend of the sheriff's, had called Sheriff Amis telling him about the ticket. From these circumstances, it is reasonable for Richardson to have believed it was an effort by the sheriff to "fix" the citation. These are highly relevant factors to be considered by the Board.

 A trial court may overturn an administratively imposed penalty only when the penalty is found to be grossly excessive or a manifest abuse of discretion. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [213 Cal.Rptr. 5]; *Gray* v. *State Personnel Bd.* (1985) 166 Cal.App.3d 1229 [213 Cal.Rptr. 5]; *Blake* v. *State Personnel Board* (1972) 25 Cal.App.3d 541 [102 Cal.Rptr. 50].)

Here, the trial court determined the penalty imposed was grossly excessive. "The factors to be considered in determining whether or not an abuse of discretion occurred include the extent to which the conduct harms the public service, the likelihood of a recurrence, and the circumstances surrounding the misconduct. (*Skelly, supra*, 15 Cal.3d at p. 218.)

"In *Ackerman* v. *State Personnel Bd.* (1983) 145 Cal.App.3d 395 [193 Cal.Rptr. 190], the court emphasized the language in *Skelly* which indicated that the 'overriding consideration' is the ' "*extent to which the employee's conduct resulted in,* or if repeated is likely to result in '[h]arm to the public service.' " ' (*Ackerman,* at p. 399.)" (*Gray* v. *State Personnel Bd., supra,* 166 Cal.App.3d at pp. 1232-1233.)

 Measuring Richardson's conduct against this standard, the trial court's determination that the penalty was grossly excessive is fully supported. The instance leading to his discharge was a single, isolated incident that occurred after an unblemished six and one-half-year record of public service

during which he had received several commendations. He was gone from his duty for only about an hour before he returned and no harm or danger to the county appears by reason of his absence. More importantly, the provocation for the confrontation with Edmondson resulted from Edmondson's contradiction of his prior authorization to issue the citation and by the sheriff's interference on behalf of his friends with Richardson's law enforcement duties. These circumstances render it highly unlikely that the incident will recur and mitigate against the Board's implied determination of harm to the public service.

We now turn to the remedy. The courts have repeatedly stated that the trial court should not fix the penalty and that the discretion to fix the penalty remains in the administrative body and will not be disturbed absent a determination that the penalty fixed was grossly excessive or a manifest abuse of discretion. (*Bonham* v. *McConnell* (1955) 45 Cal.2d 304, 306 [288 P.2d 502]; *Kirkpatrick* v. *Civil Service Com.* (1981) 116 Cal.App.3d 930, 933-934 [172 Cal.Rptr. 405]; *Zink* v. *City of Sausalito* (1977) 70 Cal.App.3d 662, 666 [139 Cal.Rptr. 59]; *Lake* v. *Civil Service Commission* (1975) 47 Cal.App.3d 224 [120 Cal.Rptr. 452].) But, what if the trial court makes a supported finding that the penalty fixed by the administrative agency was grossly excessive? In the face of such a finding, we agree with the statement in *Blake* v. *State Personnel Board, supra,* 25 Cal.App.3d 541, 553: "On the other hand, if the penalty imposed was under all the facts and circumstances clearly excessive, the court is not powerless to act. [Citation.]" (See also *Martinez* v. *County of Tulare* (1987) 190 Cal.App.3d 1430, 1438 [235 Cal.Rptr. 851].)

Implicit in the trial court's authority to find the penalty grossly excessive is the power to direct the administrative agency to fix the penalty less than that which was found to be excessive. (See *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, 219-220; *James* v. *Board of Dental Examiners* (1985) 172 Cal.App.3d 1096, 1116 [218 Cal.Rptr. 710]; *Blake* v. *State Personnel Board, supra,* 25 Cal.App.3d 541, 554.) However, consistent with the long-established principle that the authority to fix the penalty is primarily in the administrative body, we are of the opinion that the precise terms of the penalty less than that found to be excessive should rest with the administrative agency. (See *Zink* v. *City of Sausalito, supra,* 70 Cal.App.3d 662, where the court found it improper for the trial court to direct the city to reinstate the employee "in a rank not lower than patrolman.")

Lastly, county contends the trial court erred in awarding petitioners' (Richardson and the Merced County Sheriff's Employees Association) attorney's fees pursuant to Government Code section 800.[2]

The court's memorandum of decision found that the county "acted arbitrarily." This finding comports with the requirements of Government Code section 800 and is one of fact and will not be reversed on appeal absent an abuse of discretion. (*Halaco Engineering Co.* v. *South Central Coast Regional Com.* (1986) 42 Cal.3d 52, 79 [227 Cal.Rptr. 667, 720 P.2d 15]; *Mitchell* v. *State Personnel Board* (1979) 90 Cal.App.3d 808 [153 Cal.Rptr. 552]; *Madonna* v. *County of San Luis Obispo* (1974) 39 Cal.App.3d 57 [113 Cal.Rptr. 916].) The record herein adequately supports the finding.

The formal judgment ordered attorney's fees to petitioners, that is both Richardson and the employee association. Section 800 refers to an award of attorney's fees to the "complainant" "where he is personally obligated to pay such fees." Notwithstanding this language, the courts appear to have authorized fees to be paid to an association of which an employee is a member. (*Redondo Beach Police Officers' Assn.* v. *City of Redondo Beach* (1971) 68 Cal.App.3d 595 [137 Cal.Rptr. 384]; *Plumbing etc. Employers Council* v. *Quillin* (1976) 64 Cal.App.3d 215 [134 Cal.Rptr. 332].) This issue was not raised or briefed by the parties.

Lastly, with regard to attorney's fees, there is no support in the record for the implied determination of the trial court that petitioners were personally obligated to pay the attorney's fees which is a matter that can be subject to proof on remand.

The judgment of the trial court insofar as it directs "Respondent Board of Supervisors of the County of Merced shall be directed to set aside its Decision in this matter, and to impose a penalty on Petitioner Richardson, at a level less than termination, which is fair, just and reasonable" is affirmed and any further direction to the board of supervisors other than

---

[2] Government Code section 800 provides: "In any civil action to appeal or review the award, finding, or other determination of any administrative proceeding under this code or under any other provision of state law, except actions resulting from actions of the State Board of Control, where it is shown that the award, finding, or other determination of such proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof in his official capacity, the complainant if he prevails in the civil action may collect reasonable attorney's fees, but not to exceed one thousand five hundred dollars ($1,500), where he is personally obligated to pay such fees, from such public entity, in addition to any other relief granted or other costs awarded.

"This section is ancillary only, and shall not be construed to create a new cause of action.

"Refusal by a public entity or officer thereof to admit liability pursuant to a contract of insurance shall not be considered arbitrary or capricious action or conduct within the meaning of this section."

that contained in this affirmance is disapproved; the judgment awarding attorney's fees is reversed and remanded for reconsideration in light of this opinion. Each of the parties shall bear their own costs on appeal.

Martin, Acting P. J., and Stone (W. A), J., concurred.