Filed 9/6/13  Mifflin v. McDonnell CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JASON MIFFLIN, | B244804 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. NS024743) |
| v. | |
| JAMES MCDONNELL et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph E. DiLoreto, Judge.  Affirmed.

Law Office of James E. Trott and James E. Trott for Plaintiff and Appellant.

Robert E. Shannon, City Attorney and Christina L. Checel, Senior Deputy City Attorney for Defendants and Respondents.

Jason Mifflin appeals from the judgment denying his petition for writ of mandate brought pursuant to Code of Civil Procedure section 1094.5. The effect of the denial was to sustain his suspension for 40 hours from his employment as a Long Beach Police Officer. Mifflin contends there is no evidence to sustain the charges against him, and the 40 hour suspension was an abuse of discretion. Finding no error, we affirm.[1]

## I. FACTS

The facts in this case were undisputed. On February 17, 2010, Officer Mifflin was in the booking area of the Long Beach Police Department (the "Department"). He used the camera in his cell phone to record a video of a woman who was face down on the floor in restraints, screaming and yelling. Mifflin then sent the video to his wife, along with a message stating, "I hope you're enjoying the party at home. This is what I am doing." His wife, who also worked for the Department, was hosting their son's birthday party. He also sent the video to a good friend, along with a message stating, "This is what I'm doing at work tonight. Do not forward this to anybody." The friend did not work for the Department.

It was also undisputed that police officers commonly take personal videos and photographs for their own and the Department's protection. There was no rule or regulation specifically prohibiting officers from forwarding videos or photographs taken in the course of their duties.

---

[1] We grant Mifflin's motion to augment the record with the July 8, 2011 and September 28, 2011 reporter's transcripts.

2

## II. DISCUSSION

### A. Violations

The Department charged Mifflin with engaging in "negligent and unprofessional conduct" by videotaping the suspect and forwarding the video to his wife and friend. The Department found this conduct violated three provisions of the Civil Service Rules and Regulations, five provisions of the Department Manual and a provision of the Long Beach Municipal Code.

Appellant appealed the decision to the Long Beach Civil Service Commission (the "Commission"), which referred the matter to a hearing officer. The officer held a hearing and declined to sustain the 40 hour suspension. The officer found: "This hearing officer relies primarily on Article VII, § 84 of the Civil Service Rules and Regulations of the City of Long Beach which sets forth causes for suspension, demotion, release or discharge. Based upon the evidence presented, this hearing officer finds no <u>inexcusable</u> misconduct on the part of Officer Mifflin. . . . This may have been a minor lapse in judgment but it does not rise to the level of egregious, malicious, or inexcusable conduct as alleged by the Complainant's primary witness."

The Department opposed the hearing officer's report and requested the Commission to hear the matter or find the charge was sustained. Among other things, the Department noted there was no allegation Mifflin engaged in "misconduct," and no violation which was based on "egregious" or "malicious" conduct.[2] The Commission's president reported: "The Commission found the charge was sustained by substantial evidence. Officer Mifflin admitted to the charge and only disputed that his actions

---

[2] A Civil Service rule or regulation did prohibit "inexcusable neglect of duty" and was one of three provisions of Article VII, § 84 which the Department found Mifflin had violated and one of nine provisions altogether which the Department found Mifflin had violated. "Egregious" and "malicious" were used as adjectives by Commander Levy while testifying, not as technical legal terms. They reflected his opinion, not allegations in a complaint.

constituted misconduct . . . . The Commission sustained the chief of police's decision to suspend Officer Mifflin for four days."

Appellant filed a petition for writ of administrative mandamus in the superior court. The petition was denied. "[T]he Court found the weight of the evidence supports the decision of the Long Beach Civil Service Commission to suspend [Mifflin]."

Appellant contends both the Commission and the superior court failed to "tie the facts of the case to the charges resulting in a lack of necessary proof."

We review the superior court's determination that the Commission did not abuse its discretion de novo. (See *Talmo v. Civ. Serv. Comm'n* (1991) 231 Cal.App.3d 210, 226.) That is, we review "the administrative determination, not that of the superior court, by the same standard as was appropriate in the superior court." (*Schmitt v. City of Rialto* (1985) 164 Cal.App.3d 494, 501.)[3]

## 1. The Commission's findings of violations

The Commission's president reported, "The Commission found that [Mifflin's] actions violated Civil Service Rules and Regulations, Article VIII, Section 84, Subsections 1, 4 and 10; Long Beach Police Department Manual Sections 3.1, 3.2, 3.4 and 3.7." We review the evidence pertinent to each of these violations.

### a. "Inexcusable Neglect of Duty"

Civil Service Rules and Regulations section 84(4) prohibits the "[i]ntentional or grossly negligent failure to exercise due diligence in the performance of a known official duty."

Levy testified some officers will routinely videotape or take pictures to protect themselves and the Department during the course and scope of their employment. He

___

[3] The superior court was required to use the independent judgment test. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805.)

added, "And I think in this case, perhaps, the first part of what [Mifflin] did, taking the photo to protect himself, protect the Department" was appropriate. The negligence occurred in forwarding the video to a friend with "the potential that that had, for that person to forward it or post it or do whatever where it gets, as you said, 'viral' . . . ."

Mifflin did not safeguard the video he took in the booking area. By instructing his friend to not forward the video, Mifflin demonstrated he was aware the video could be sent to others, and potentially go viral. This evidence is sufficient to support the finding that Mifflin negligently failed to exercise due diligence in the performance of his duty.

### b. Courtesy

Civil Service Rules and Regulations section 84(10) prohibits "[d]iscourteous, disruptive or harassing conduct toward the public or other employees." Department Manual section 3.4 requires an employee to be "courteous and orderly when working with the public."

Discourteous conduct includes behavior which is lacking consideration or respect for others. (http://en.wiktionary.org/wiki/discourteous; see http://www.merriam-webster.com/dictionary/courtesy.) Sending a video of a person in restraints who is agitated and emotional shows a lack of consideration or respect for that person. It is not courteous.

Mifflin argues his conduct was not discourteous because the suspect's face was not visible in the video and her name was not mentioned. While these facts reduce the level of discourtesy, they do not eliminate it. The suspect's clothing, hair and skin tone were visible, and her voice audible. It was certainly possible she could have been recognized by someone who knew her. This evidence is sufficient to support the finding that Mifflin was discourteous.

### c. Fairness

Department Manual section 3.2 requires employees to "[t]reat all persons equally and with fairness." Mifflin singled out the suspect in this incident for videotaping and commentary, apparently because of her extreme emotional distress. He did so for his own personal benefit. It is reasonable to conclude Mifflin did not treat this suspect the way he treated other suspects. This evidence is sufficient to support the finding that Mifflin acted unfairly toward the suspect.

### d. Integrity of the Department

Department Manual section 3.7 requires employees to "conduct their private and professional lives in such a manner as not to harm the integrity or reputation of the Department."

Mifflin's behavior could have damaged the integrity or reputation of the Department. Commander Levy testified the Department "works very, very hard day in and day out to garner the respect and trust of the community members and the people that we serve, especially in the minority of the community." He opined the video sent by Mifflin had the potential to be very damaging to the reputation of the department. Levy also pointed out that with a video "once you hit that send button, it's out there."

Appellant contends there was nothing in the video to identify the suspect or the Department, and so there was no possible harm. The video was sent from Mifflin's cell phone. Mifflin's friend knew the video was made and sent by a Long Beach police officer while on duty. Further, as we have discussed, it is certainly possible the suspect could be recognized by people who knew her. The suspect herself could explain when and where the video was taken. The video could have been easily linked to the Department.

In addition, the restraints and the position of the suspect strongly suggested the suspect was in law enforcement custody. As Commander Levy explained, misconduct by

6

any police officer affected the reputation of the entire profession of law enforcement. Misconduct in the New York Police Department would affect the Long Beach Police Department and vice versa. This evidence is sufficient to support the finding that Mifflin failed to conduct his personal and professional lives in manner that would not harm the integrity or reputation of the Department.

### e. Obey other rules and regulations

Civil Service Rules and Regulations section 84(1) prohibits "[v]iolation of any provision of the Charter of the City, the Rules and Regulations of the Commission, or any written departmental or citywide policy, procedure, rule, regulation, or directive." Department Manual section 3.1 requires employees "to obey all State laws, all laws and regulations of the Department, all Orders and Directives of the Department and Divisions thereof, and the City of Long Beach Civil Service Rules and Regulations."

As we discuss in this opinion, Mifflin violated provisions of the Civil Service Rules and Regulations and the Department Manual. In so doing, he violated section 84(1) and section 3.1.

### 2. Superior court's denial of the writ

In the minute order denying the writ, the superior court found: "Although it is true that Officer Mifflin never violated any specific rules of the Department, [nevertheless] the Court questions his judgment. [¶] Officer Mifflin's conduct in sending a phone video to others showing an arrest during the course of a difficult booking jeopardizes the legal exposure of the City and himself for potential violation of privacy rights of another. [¶] Given the broad language of Chapter 4 of the Long Beach Police Department Manual section 3.7 his conduct did potentially harm the integrity or reputation of the Long Beach Police Department"

7

Mifflin claims the court's statement that "Mifflin never violated any specific rules of the Department" means the court found he did not violate any provision in the suspension letter. He is incorrect. In context, the court was simply referring to the undisputed fact that the Department did not have a rule specifically prohibiting taking or forwarding videos or photos of a suspect at the police station. Violations of eight other rules and regulations were included in the suspension letter, and the court specifically found a violation of one of them, Department Manual section 3.7.

Mifflin also argues there was no "legal exposure" to the Department because the suspect's face was not visible, nothing in the video linked it to the Department, and the video did not in fact go "viral." The court was evaluating Mifflin's judgment at the time he sent the video. Mifflin's comments show he was aware of the potential for the video to be forwarded, yet sent it anyway. As we have explained, there was a potential for the suspect and the Department to be identified.

## B. Penalty

Mifflin contends the 40-hour suspension was excessive, and the Commission and superior court abused their discretion in upholding it.

A court may overturn an administratively imposed penalty only if the penalty is found to be "grossly excessive or a manifest abuse of discretion." (*Richardson v. Board of Supervisors* (1988) 203 Cal.App.3d 486, 494.)

Generally, three factors should be considered in evaluating an administrative penalty: "the circumstances surrounding the misbehavior, the degree to which it affected the public service and the likelihood of its recurrence." (*Blake v. State Personnel Board* (1972) 25 Cal.App.3d 541, 553-554.) The court also considers the nature of the employee's profession, "since some occupations carry responsibilities and limitations on personal freedom not imposed on those in other fields. [Citation.]" (*Thompson v. State Personnel Board* (1988) 201 Cal.App.3d 423, 429.) Peace officers may be held to higher

8

standards of conduct than civilian employees. (*Department of Corrections & Rehabilitation v. California State Personnel Board* (2007) 147 Cal.App.4th 797, 808.)

Mifflin exercised poor judgment in sending the video to his friend. In so doing, he created a risk of legal liability for the Department. "The public is entitled to protection from unprofessional employees whose conduct places people at risk of injury and the government at risk of incurring liability. [Citation.]" (*Hankla v. Long Beach Civil Service Commission* (1995) 34 Cal.App.4th 1216, 1223.) Further, Commander Levy explained the level of discipline was determined in part by the fact Mifflin knew his conduct was wrong and did it anyway.[4]

III. DISPOSITION

The judgment is affirmed. Respondents are to recover costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KUMAR, J.[*]

We concur:

TURNER, P. J.

KRIEGLER, J.

---

[4] This conclusion was based in large part on Mifflin's instruction to his friend not to forward the video.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9